**NOT RECOMMENDED FOR PUBLICATION**
File Name: 04a0133n.06
Filed: November 29, 2004

**No. 03-3915**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

STEVEN GRAHAM, DANIEL R. GREIN, and )
TIMOTHY BAKER, )
             )
      Plaintiffs-Appellants, )
             )   ON APPEAL FROM THE UNITED
v. ) STATES DISTRICT COURT FOR
             ) THE NORTHERN DISTRICT OF
             ) OHIO
CITY OF MENTOR, RICHARD A. AMIOTT, )
JULIAN M. SUSO, EDWARD WALSH, and )
RICHARD HENNING, )
             )
      Defendants-Appellees. )

---

**Before: SILER, BATCHELDER, and ROGERS, Circuit Judges**

      **SILER, Circuit Judge.** Plaintiffs Steven Graham, Daniel Grein, and Timothy Baker appeal

the grant of summary judgment in favor of the City of Mentor ("Mentor"), its police chief, its city

manager and one current and one former city council president on plaintiffs' claim, brought pursuant

to 42 U.S.C. § 1983, for violation of their rights under the First and Fourteenth Amendments. The

plaintiffs argue that: 1) they were discharged in retaliation for exercising their First Amendment

rights; 2) the Mentor police rules are an unconstitutional prior restraint on speech; and 3) the police

chief and city manager conspired to deprive the plaintiffs of their civil rights. For the reasons stated

below, we **AFFIRM**.

**BACKGROUND**

Graham, Grein, and Baker were police officers for the City of Mentor and active officers in the police union. While employed, they repeatedly used the media to voice their disapproval of Richard Amiott, the Mentor Police Chief. Amiott's decision to recommend the discharge of the officers was based, in part, on the officers' use of the media to intensify department disputes.

The officers spoke to the media on the institution of police officer "performance standards" or "ticket quotas," as well as on issues of hazing within the police force. They alerted the press to actions of Chief Amiott that they viewed as misconduct, including "ticket fixing" practices, improper logging and taking of compensatory time, and improper claims that the chief had qualified on the shooting range. Additionally, while under internal investigations, Graham and Grein both conducted interviews with the press concerning the merits of the allegations against them.

The officers also allegedly harassed a local bar owner who would not support the police union. They allegedly forced a security guard to send a letter critical of Amiott to the local newspaper. They inappropriately obtained documents concerning "voided" tickets and Amiott's shooting records. Each time the officers took an issue to the press, they did so immediately, before Mentor could investigate the allegations.

Police Chief Amiott recommended that the plaintiffs be discharged; pursuant to the terms of the collective bargaining agreement, the plaintiffs appealed that recommendation to City Manager Suso, who concurred. Each discharge proceeded to arbitration, and after extensive evidentiary hearings, the arbitrators determined that Graham and Grein should be discharged, but that Baker had engaged in only minor wrongdoing and should be reinstated with pack pay. Mentor complied with the arbitrators' determinations. Graham, Grein and Baker then brought this action against Mentor,

Amiott, Suso and City Council Presidents Walsh and Henning, claiming–among other things–that they had been discharged in retaliation for exercising their First Amendment rights, that the sections of Mentor's police rules upon which plaintiffs' discharge had been based violated the First Amendment, and that Amiott and Suso had conspired to deprive the plaintiffs of their civil rights.

## ANALYSIS

We review the district court's grant of summary judgment *de novo*. *Farhat v. Jopke*, 370 F.3d 580, 587 (6th Cir. 2004). Summary judgment is appropriate when "there is no genuine issue as to any material fact," and the non-moving party is entitled to "judgment as a matter of law." *Id.*; *see also* Fed. R. Civ. P. 56(c). All evidence must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**First Amendment Retaliation**

A government employer cannot retaliate against a public employee for exercising the right to speak freely. However, the public employee's right to speak is not limitless. To establish a prima facie case of retaliation under 42 U.S.C. § 1983, the employee must show that: "(1) he was engaged in a constitutionally protected activity; (2) he was subjected to adverse action or deprived of some benefit; and (3) the protected speech was a 'substantial' or 'motivating factor' in the adverse action." *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). If the employee can make this showing, the burden shifts to the employer to prove, by a preponderance, that "it would have taken the same action even in the absence of the protected conduct." *Jackson v. Leighton*, 168 F.3d 903, 909 (6th Cir. 1999) (citing *Mt. Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

To state a claim, the plaintiff must show that his speech is protected under the First Amendment. If not, "no further inquiry is necessary." *Banks v. Wolfe County Bd. of Educ.*, 330 F.3d 888, 892-93 (6th Cir. 2003). To prove that the speech is protected, employees must satisfy a two-prong test: 1) that the speech involved "matters of public concern or interest," *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1048 (6th Cir. 2001); and 2) that the employees' interest in the speech outweighed the employer's interest in "promoting the efficiency of the public services it performs through its employees." *Pickering v. Bd. of Educ. of Township High Sch. Dist. 205*, 391 U.S. 563, 568 (1968).

### 1. Public Concern

Protected speech must address a matter of public concern, i.e., relate to any "matter of political, social, or other concern to the community." *Connick v. Myers*, 461 U.S. 138, 146 (1983). Matters of public concern are those about which "information is needed or appropriate to enable the members of society to make informed decisions about the operation of the government." *Banks*, 330 F.3d at 893. To determine whether speech relates to a matter of public concern, the "content, form, and context of a given statement, as revealed by the whole record" must be examined. *Connick*, 461 U.S. at 147-48. Furthermore, although the motivations of the speaker are relevant, they are not determinative. *Taylor v. Keith*, 338 F.3d 639, 645 (6th Cir. 2003).

Speech that exposes corruption is a matter of public concern, *Solomon v. Royal Oak Township*, 842 F.2d 862, 865-66 (6th Cir. 1988); thus, the officers' speech on corruption is protected. The officers claimed that Amiott "fixed" parking tickets and helped friends receive lower fines for moving violations. They also claimed that Amiott received an undeserved bonus, and that

he was improperly taking compensatory time. Although not every issue involving money is a public concern, *see Albert v. Mitchell*, No. 00-4271, 2002 WL 1628241, at \*3 (6th Cir. July 22, 2002)(overtime not public concern), these allegations rise to this higher level. The officers also allege that Amiott was unqualified to carry a weapon, potentially placing the public in danger. Furthermore, the issue of "ticket quotas" may be an issue of public concern, especially if innocent drivers are cited so an officer can meet a quota. *See, e.g.*, *Ruhlman v. Hankinson*, 461 F. Supp. 145, 148 (W.D. Pa. 1978). Because the officers spoke on a matter of public concern, the speech must next be weighed under the *Pickering* balancing test.

### 2. *Pickering* Balancing

Employees do not enjoy a limitless right to free speech; instead, the employees' right must be balanced against the employer's right to maintain a productive workplace. *Pickering*, 391 U.S. at 568. This balancing is a question of law and is a fact-specific inquiry. *See Williams v. Kentucky*, 24 F.3d 1526, 1537 (6th Cir. 1994). Employees have an interest in uncovering potential corruption, but the city has an interest in maintaining an effective police force, free from internal division. *See Brown v. City of Trenton*, 867 F.2d 318, 322-23 (6th Cir. 1989) (dicta).

When police officers' speech is "reasonably calculated to create division," the speech may be unprotected because of its potential negative effect on the public. *Id.* at 322. Furthermore, a police chief cannot be expected to "tolerate action which he reasonably believed would disrupt the office, undermine his authority, and destroy close working relationships," *id.* at 323 (quoting *Connick*, 461 U.S. at 154), and a city cannot be expected to tolerate officers who use both the media

and disruptive behavior in the workplace to influence personnel changes. *McMurphy v. City of Flushing*, 802 F.2d 191, 198 (6th Cir. 1986).

Graham, Grein, and Baker clearly intended to create division among the officers. The news articles and media coverage forced other officers to choose between the plaintiffs and their chief. The plaintiffs created a "you are either for us or against us" atmosphere within the station house, and Amiott cannot be expected to tolerate such disruptive behavior. A police chief needs authority over and loyalty from his subordinates. The officers claim Amiott should have expected disagreement with them because they were union leaders; however, he could not have been expected to tolerate a media campaign asking for his resignation. Further, the record suggests that the officers used disruptive tactics to obtain the documents supporting their allegations. For these reasons, although the officers spoke on a matter of public concern, *Pickering* balancing weighs in favor of Mentor, and we affirm the judgment of the district court.

Although the plaintiffs' claims do not survive *Pickering* balancing, Mentor presented sufficient evidence to prove that the city would have terminated the employment of Graham and Grein in the absence of any protected conduct. *See Mt. Healthy City Bd. of Educ.*, 429 U.S. at 287; *see also Cockrel*, 270 F.3d at 1056. Because Mentor would have the burden of proving this element at trial, it must prove that "*every* reasonable juror would conclude that the defendants have met their burden" at the summary judgment stage. *Cockrel*, 270 F.3d at 1057. With respect to Graham and Grein, Mentor has met this burden. These officers were terminated following arbitrations in which the arbitrators determined that misconduct warranted their dismissal. While arbitrators' decisions do not have claim-preclusive effect on constitutional claims pursued under § 1983, *see McDonald*

*v. City of West Branch*, 466 U.S. 284, 290 (1984), the evidence supporting the arbitrators' decisions here is sufficient to show that non-speech reasons motivated Mentor.

**Constitutionality of Mentor Police Rules**

The officers claim that the Mentor police rules are unconstitutional both facially and as applied. The claim that the rules are unconstitutional as applied to the officers fails as a matter of law because by failing to prove their § 1983 claim, their constitutional rights were not violated. To sustain a facial challenge, the officers must prove that the rules are "substantially" overbroad. *Brown*, 867 F.2d at 322. Although the government may place greater restrictions on the speech of employees than on the speech of the public at large, it must "arrive at a balance between the interests of the [employee], as a citizen, in commenting on matters of public concern and in the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *United States v. National Treasury Employees Union*, 513 U.S. 454, 465-66 (1995).

The officers challenge six rules: "Criticism," "Unbecoming Conduct," "Insubordination," "Persons Authorized to Make News Releases," "Public Information Officer Kept Informed," and "Criminal Investigations-News Releases." The rule on "Criticism" is not overbroad because it simply codifies categories of unprotected speech. The rule on "Unbecoming Conduct" is also constitutional because it contains guidelines, unlike the similarly titled rule in *Bence v. Breier*, 501 F.2d 1185, 1190 (7th Cir. 1974). The rule on "Insubordination" is not overbroad because it only requires officers to obey "lawful order[s]." The final three rules are not overbroad because they are ministerial, narrowly drawn, and not directly related to the content of speech.

**Section 1983 *Monell* Claim**

The officers claim that the City of Mentor should be held liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1977).  To state a claim under *Monell*, the officers must show that Mentor had an "official policy" or "custom" that violated the officers civil rights. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986).  However, because the officers were not deprived of their civil rights, i.e., they did not prove that they suffered First Amendment retaliation, Mentor cannot be held liable under *Monell*.

**Conspiracy to Deprive Civil Rights**

The officers claim that Amiott and Suso conspired to deprive them of their civil rights by discharging them in retaliation for their exercise of their First Amendment rights.  A civil conspiracy is "an agreement between two or more persons to injure another by unlawful action." *Farhat v. Jopke*, 370 F.3d 580, 599 (6th Cir. 2004).  Because the officers failed to provide evidence sufficient to withstand summary judgment on their retaliation claim, they cannot prevail on their conspiracy claim.

**AFFIRMED**.