CONSOLIDATED INFRASTRUCTURE MANAGEMENT AUTHORITY, INC., Appellant/Cross–Appellee,

v.

Thomas Everette ALLEN, Appellee/Cross–Appellant.

Nos. 2006–SC–000188–DG, 2006–SC–000712–DG.

Supreme Court of Kentucky.

Nov. 26, 2008.

Gregory N. Stivers, Scott Donald Laufenberg, Kerrick, Stivers, Coyle & Van Zant, PLC, Bowling Green, KY, Counsel for Appellant/Cross–Appellee.

Michael C. Bratcher, Pamela Carolyn Bratcher, Bratcher & Bratcher, LLP, Bowling Green, KY, Counsel for Appellee/Cross–Appellant.

Opinion of the Court by Justice CUNNINGHAM.

Consolidated Infrastructure Management Authority, Inc. ("CIMA") appeals from a judgment of the Logan Circuit Court in favor of its former employee, Thomas Everette Allen. Allen brought the action pursuant to Kentucky's Whistleblower Act, KRS 61.101 *et. seq.*, and was awarded back pay, as well as attorney's fees and costs. The Court of Appeals affirmed the trial court's judgment in its entirety. For the reasons set forth herein, we likewise affirm.

In 2000, Allen was hired as a Safety Director for the City of Russellville. The following year, Russellville joined with the City of Auburn to form CIMA, which would administer the water and sewer services for both cities. Upon CIMA's creation, Allen became the Safety Director. The position required Allen's supervision of safety standards at CIMA's Russellville and Auburn facilities.

Shortly following his transfer, Allen performed a walk-through of the Auburn facility and found numerous safety violations. He presented his list to CIMA's Executive Director, Charles McCollum, and the Assistant Executive Director, Wayne Thomas. The list included instances of broken equipment, lack of safety railings, and torn-down exterior fencing. Despite Allen's characterization of the violations as serious, he was told there was no money to fix the violations.

In August of 2001, Allen sent a letter to McCollum, Thomas, the Chairman of CIMA's Board of Directors, and CIMA's Financial Director. The document, entitled "Notification of a Formal OSHA Inspection by Safety Director," reported the safety violations and his efforts to fix the problems. Allen further stated, "On September 10, 2001 I will make another inspection of the facilities and when I get the violations written then there will be a dead line when they will need to be done. At this point if the violations and safety equipment that is needed is not in place I will request a survey from Frankfort OSHA...."

Allen appeared before CIMA's Board of Directors in September and October of 2001. At both meetings, he reported on safety violations and again expressed his intention to contact Kentucky OSHA if the problems were not addressed. At the October meeting, the Board voted to repair the exterior fencing, which was completed in November 2001.

In February 2002, Allen was informed that CIMA was reducing its workforce due to financial constraints and that he would be among those laid off. A week later, Allen sent a letter to the Kentucky Labor Cabinet enumerating the safety violations at CIMA's facilities and enclosing photographs. He requested an unannounced inspection of the water treatment plant and the wastewater plant. A surprise inspection was conducted, which resulted in several violation notices and penalties.

Approximately one year later, Allen brought suit against CIMA for violation of Kentucky's Whistleblower Act, wrongful

termination, and intentional infliction of emotional distress. At trial, Allen withdrew the intentional infliction of emotional distress claim. The trial court dismissed the wrongful termination claim. With respect to Allen's whistleblower claim, the trial court refused to instruct the jury on punitive damages or injunctive relief, determining that such claim was barred by the applicable statute of limitations.

The jury found in Allen's favor, awarding him $40,000 in compensatory damages. The trial court granted Allen's motion for attorney's fees and expenses. In its final order and judgment, the trial court reduced the $40,000 award by the amount which Allen had received in unemployment benefits. Shortly after the trial concluded, CIMA announced its dissolution. Allen moved the trial court to require CIMA to post a supersedeas bond; the motion was denied. Thereafter, CIMA appealed the judgment. Allen filed a cross-appeal of the reduction of the jury's award and the denial of the motion for a supersedeas bond.

The Court of Appeals affirmed the judgment, rejecting CIMA's primary contention that Allen's whistleblower claim was barred by the statute of limitations. It likewise rejected CIMA's claim that Allen's actions did not constitute "whistleblowing" within the meaning of the Act. The Court of Appeals also affirmed the trial court's refusal to require CIMA to post a supersedeas bond. This appeal followed.

■ CIMA first argues that it was entitled to a directed verdict because Allen's whistleblower claim was barred by the statute of limitations found within the Whistleblower Act. KRS 61.103(2) provides:

> Notwithstanding the administrative remedies granted by KRS Chapters 16, 18A, 78, 90, 95, 156, and other chapters of the Kentucky Revised Statutes, employees alleging a violation of KRS 61.102(1) or (2) may bring a civil action for appropriate injunctive relief or punitive damages, or both, within ninety (90) days after the occurrence of the alleged violation.

The trial court rejected CIMA's motion, concluding that the limitation applied only to claims for punitive damages and injunctive relief, not to claims for compensatory damages. We agree.

■ To determine whether KRS 61.103(2) applies to all claims brought under the Whistleblower Act, we look first to the plain language of the statute, affording words their ordinary meaning. "We are not at liberty to add or subtract from the legislative enactment or discover meanings not reasonably ascertainable from the language used." *Commonwealth v. Harrelson,* 14 S.W.3d 541, 546 (Ky.2000). Statutes must be liberally construed so that the intent of the legislature is carried out. KRS 446.080(1).

■ The plain language of KRS 61.103(2) indicates that the 90–day limitation applies to civil actions "for appropriate injunctive relief or punitive damages, or both...." This is not to say that whistleblowers are limited solely to injunctive relief or punitive damages in seeking redress: KRS. 61.990(4) specifically permits a court to order "reinstatement of the employee, the payment of back wages, full reinstatement of fringe benefits and seniority rights, exemplary or punitive damages, or any combination thereof" in actions filed under KRS 61.102 and 61.103. Yet, there is nothing in the language of KRS 61.103(2) that would require its application to actions for relief other than injunctive or punitive, such as a compensatory claim for back pay. When the express language of a statute is clear and unambig-

uous, this Court is without authority to construe the statute otherwise. *See Commonwealth v. Reynolds*, 136 S.W.3d 442 (Ky.2004).

This interpretation does not lead to an absurd result simply because it limits actions brought under the statute according to the nature of the relief sought. When more than three months passes after an employee is dismissed, it becomes increasingly difficult for the state employer to comply with an injunctive order. Because they are paid with taxpayer dollars, it is common that punitive damage awards are either unavailable or heavily restricted when sought against a public entity. *See generally Green v. Jersey City Bd. of Educ.*, 828 A.2d 883, 888, 177 N.J. 434, 443 n. 4 (2003). In light of the significant policy concerns surrounding such awards, the General Assembly's decision to limit the right to collect punitive damages from public entities is rational and harmonizes with the overall intent of the Whistleblower Act.

The 90–day limitation found at KRS 61.103(2), by its express language, applies only to claims for injunctive relief and/or punitive damages. Claims for compensatory damages and other relief, as made available through KRS 61.990(4), are not subject to this limitation. The trial court correctly determined that Allen's action for compensatory damages was not time-barred by KRS 61.103(2).

CIMA next contends that Allen failed to establish that he engaged in activity protected by the Whistleblower Act, and that a directed verdict should have been granted. CIMA relies primarily on the fact that Allen did not contact Kentucky OSHA until after he was notified of his lay-off. Further, CIMA argues that Allen only requested a survey from Kentucky OSHA, which leads only to education and training rather than enforcement; therefore, his threat cannot be considered a protected disclosure. The trial court denied the motion.

On appeal, a reviewing court must determine whether the trial court erred in failing to grant a directed verdict. "All evidence which favors the prevailing party must be taken as true and the reviewing court is not at liberty to determine credibility or the weight which should be given to the evidence, these being functions reserved to the trier of fact." *Lewis v. Bledsoe Surface Min. Co.*, 798 S.W.2d 459, 461 (Ky.1990). The trial court's ruling will be overturned only where the jury's verdict is so flagrantly against the weight of the evidence as to indicate passion or prejudice. *Denzik v. Denzik*, 197 S.W.3d 108, 110 (Ky.2006).

A state employee engages in whistleblowing when he or she "in good faith reports, discloses, divulges, or otherwise brings to the attention of [government officials] any facts or information relative to an actual or suspected violation of any law, statute, executive order, administrative regulation, mandate, rule, or ordinance[.]" KRS 61.102(1). Disclosure is defined at KRS 61.103(1) as "a person acting on his own behalf, or on behalf of another, who reported *or is about to report,* either verbally or in writing, any matter set forth in KRS 61.102." (Emphasis added). When read together, these statutes indicate that disclosure not only occurs when a report is *actually* made, but also when *the threat* of a report is made. Allen's letter to CIMA's Board included his intention to contact "Kentucky OSHA" and to report the safety violations if they were not corrected immediately. It is fairly and reasonably characterized as a threat to report safety violations at CIMA's facilities. This letter, tendered prior to Allen's dismissal, constitutes a disclosure within the meaning of KRS 61.102 and 61.103.

CIMA contends that Allen did not engage in whistleblowing because he threatened to contact Kentucky OSHA's educational office, which does not have an enforcement function. This assertion is not supported by the record. The evidence establishes that Allen was in continual contact with Joseph Giles of Kentucky OSHA's Education and Training Division. Allen had previously requested educational surveys and courtesy inspections from Mr. Giles, which were conducted at CIMA's Russellville facility.

However, in his letter to CIMA's Board, Allen threatened to report the safety violations to Tom Edwards of Kentucky OSHA's Compliance Department. In fact, Allen specifically stated he did not intend to contact Mr. Edwards for another educational survey: "I was going to report [CIMA] to Mr. Tom Edwards and have him have the enforcers come down."

KRS 61.102 protects employees that report, or threaten to report, facts or information relative to an actual or suspected violation. By his letter to CIMA's Board, Allen expressed his intent to contact Kentucky's Occupational Safety and Health Program regarding safety violations at the Auburn plant if the problems were not corrected. This action falls within the protected disclosures of Kentucky's Whistleblower Act. The trial court did not err in denying CIMA's motion for a directed verdict.

In his cross-appeal, Allen argues that the trial court erred in not requiring CIMA to post a supersedeas bond after it dissolved. CR 81A exempts governmental entities from the requirement to post a supersedeas bond pending appeal: "Whenever a bond is or may be required by these rules in order to ... stay proceedings under or the enforcement of a judgment, such requirement shall not apply to the United States, the Commonwealth or any

of its municipal corporations or political subdivisions, or any of their agencies or officers acting for or on their behalf."

The fact that CIMA dissolved did not change application of this rule. Upon dissolution, CIMA was absorbed by the cities of Russellville and Auburn. The judgment continues to be enforceable against those entities: "Thus, if a municipal corporation goes out of existence by being annexed to, or merged in, another corporation, and if no legislative provision is made respecting the property and liabilities of the corporation which ceases to exist, the corporation to which it is annexed, or in which it is merged, is entitled to all its property and is answerable for all its liabilities." 56 Am.Jur.2d., *Municipal Corporations, Etc.* § 80 (2008). The trial court correctly refused to order CIMA to post a supersedeas bond following its dissolution.

The judgment of the Logan Circuit Court is affirmed in its entirety.

ABRAMSON, NOBLE, SCHRODER, SCOTT, and VENTERS, JJ., concur. MINTON, C.J., not sitting.