NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0159n.06

No. 09-5119

**FILED**
**Mar 15, 2010**
LEONARD GREEN, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

MELVIN KINDLE; BRADLEY SILVERIA;
DIEDRA ADKINS,

      Plaintiffs-Appellants,

v.

CITY OF JEFFERSONTOWN, KENTUCKY;
C L A Y   F O R E M A N ,   M A Y O R ,
INDIVIDUALLY AND IN HIS OFFICIAL
CAPACITY; JEFFERSONTOWN CIVIL
SERVICE COMMISSION,

      Defendants-Appellees.

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF KENTUCKY

_____/

BEFORE:    GUY, CLAY, and WHITE, Circuit Judges.

      CLAY, Circuit Judge.  Plaintiffs, Melvin Kindle, Bradley Silveria, and Diedra Handy,[1]

appeal from the district court's order granting summary judgment in favor of Defendants, City of

Jeffersontown, Clay Foreman, and Jeffersontown Civil Service Commission, in this action alleging

that the City violated Plaintiffs' rights under the Kentucky Whistleblower Act, Ky. Rev. Stat. §§

61.101-103, and that the City and the Mayor violated Plaintiffs' rights under the First Amendment

_____

     [1]At the time Plaintiffs filed this action, Handy was known as "Diedra Adkins." She married
and changed her name in the interim.

1

pursuant to 42 U.S.C. § 1983. For the reasons set forth below, we **VACATE** the district court's order and **REMAND** for further proceedings consistent with this opinion.

## BACKGROUND

Plaintiffs worked for the Jeffersontown Police Department ("JPD"), Kindle as a police officer and Silveria and Handy as dispatchers. On January 25, 2007, Plaintiffs were fired following a proceeding before the Jeffersontown Civil Service Commission ("JCSC" or "the Commission"). Plaintiffs were brought before the Commission after drafting and circulating a report alleging various incidents of misconduct on the part of Lieutenant Colonel Peggy Emington of the JPD, in her official capacity. Plaintiffs tendered the report to Jeffersontown Mayor Clay S. Foreman, Jeffersontown Chief of Police Colonel Fred Roemele, Emington, and members of the Jeffersontown City Council ("JCC") as an attachment to a letter addressed to the Jeffersontown Ethics Commission ("JEC").

In September 2006, prior to filing the report, Silveria and Handy informed Roemele that Emington had created a hostile work environment that had prompted them to go on medical leave. Roemele responded that he was unable to do anything with regard to Emington because his hands were "politically tied." (Dist. Ct. R.E. 31 Ex. 1 at 13). On October 3, 2006, while both Silveria and Handy were on medical leave, seven JPD sergeants and two JPD corporals reported allegations of misconduct by Emington to Roemele, who told Foreman about the meeting.

On October 10, 2006, Plaintiffs reported to Foreman alleged violations of police department policy by Emington. Plaintiffs indicated that they had consulted an attorney and were considering filing a report pursuant to the Kentucky Whistleblower Act. Foreman told Plaintiffs to delay taking any action until after election day, which was four weeks away, because the election was consuming much of his time. Foreman asked Roemele to monitor the situation closely.

On October 27, 2006, Plaintiffs tendered the report pursuant to § 61.102 of the Kentucky Whistleblower Act[2] alleging: "facts and information relative to actual and/or suspected violations of laws, ordinances, policies and procedures of the City of Jeffersontown and other authorities and jurisdictions . . . [and] actual incidents and ongoing practices of mismanagement, waste, and abuse of authority occurring within the Jeffersontown Police Department and perpetrated by Lt. Col. Peggy Emington." (Dist. Ct. R.E. 53 Am. Compl. Ex. 3). Specifically, Plaintiffs' report alleged that Emington: (1) violated federal and state wage and hour laws by requiring dispatchers to report for duty fifteen minutes early and not paying them overtime; (2) generated unnecessary overtime by forcing some dispatchers to work overtime so that others could attend social events with Emington; (3) violated staffing policy by leaving only one dispatcher on duty so that others could accompany Emington on Secretary's Day; (4) failed to contribute to the retirement account of a part-time employee and then reduced that employee's work schedule when she complained to the administration; (5) improperly used an online database to check on employees' controlled substance prescriptions; (6) failed to qualify with her firearm; and (7) committed miscellaneous acts of mismanagement and/or abuse of authority.

On October 31, 2006, Roemele notified Foreman that pursuant to JPD Standard Operating Procedures ("SOPs") he felt obligated to have the JPD investigate the allegations and file a written

---

[2]Ky. Rev. Stat. § 61.102 states: "No employer shall subject to reprisal . . . any employee who in good faith reports, discloses, divulges . . . any facts or information relative to an actual or suspected violation of any law, statue, executive order, administrative regulation, mandate, rule, or ordinance of the United States, the Commonwealth of Kentucky, or any of its political subdivisions, or any facts or information relative to actual or suspected mismanagement, waste, fraud, abuse of authority, or a substantial and specific danger to public health or safety."

report. On November 1, 2006, Foreman responded to Roemele that the matter had been referred to the JEC and that the JPD should not conduct an investigation.

On November 20, 2006, Plaintiffs withdrew their complaint, citing retaliatory action that Jeffersontown had taken against them. Plaintiffs did not appear at the JEC hearing on November 21, 2006, which was scheduled as a result of their report. Nonetheless, the JEC reviewed and dismissed Plaintiffs' complaint with prejudice, citing a lack of evidence establishing jurisdiction.

On November 28, 2006, Emington filed a formal complaint against Plaintiffs with Foreman, which Foreman forwarded to the JCSC. Emington's complaint requested that Jeffersontown bring a formal personnel investigation and civil service charges against Plaintiffs and alleged that Plaintiffs violated several state laws and JPD SOPs by the manner in which they disclosed false information. On December 5, 2006, the JCSC issued a notice of hearing to Plaintiffs, advising them of their procedural due process rights under the civil service ordinance and scheduling a hearing for December 13, 2006. The hearing was continued at Plaintiffs' request to January 25, 2007.

After the Jefferson Circuit Court denied Plaintiffs' motion to prohibit the JCSC from conducting the hearing, the Commission convened as scheduled. Plaintiffs appeared by counsel and informed the Commission that they had elected to pursue their claims in circuit court and would be presenting no evidence, calling no witnesses, and making no arguments. At that point, Silveria and Handy exited the hearing room; Kindle stayed in the room for the duration of the proceedings, but did not participate. After Emington completed her case and the Commission deliberated, the Commission found that Plaintiffs had violated three JPD rules and terminated Plaintiffs' employment with the JPD. On February 5, 2009, the Commission issued written and particularized findings of fact as required under Kentucky law.

4

On February 26, 2007, Plaintiffs filed this action in Kentucky state court, alleging causes of action pursuant to the Kentucky Whistleblower Act and 42 U.S.C. § 1983. On March 23, 2007, Defendants removed this case to the district court. On January 9, 2009, the district court granted summary judgment in favor of Defendants. The court held that: (1) Plaintiffs' whistleblower claim failed as a matter of law because Jeffersontown is not an employer under the Kentucky Whistleblower Act; (2) Plaintiffs' First Amendment claim failed as a matter of law because Plaintiffs' speech was not on a matter of public concern; (3) Plaintiffs' First Amendment claims against Defendant Foreman in his individual capacity failed because Foreman is entitled to qualified immunity from suit; and (4) Plaintiffs' First Amendment claims against Foreman in his official capacity and the JCSC failed as duplicative of the claims against Jeffersontown. On January 29, 2009, Plaintiffs filed a timely notice of appeal.

## DISCUSSION

### I. Standard of Review

We review a district court's grant of summary judgment *de novo*. *Aloisi v. Lockheed Martin Energy Sys., Inc.*, 321 F.3d 551, 555 (6th Cir. 2003). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, "show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We must view the evidence in the light most favorable to Plaintiffs to determine whether a genuine issue of material fact exists. *Birgell v. Bd. of Comm'rs of Butler County, Ohio*, 125 F.3d 948, 950 (6th Cir. 1997). "The central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *In re Calumet Farm, Inc.*, 398

5

F.3d 555, 558 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

## II. Kentucky Whistleblower Act Claims

Ky. Rev. Stat. § 61.102 prohibits retaliation by an "employer" against an employee who engages in any whistleblowing activity as follows:

> No employer shall subject to reprisal . . . any employee who in good faith reports, discloses, [or] divulges . . . any facts or information relative to an actual or suspected violation of any law, statute, executive order, administrative regulation, mandate, rule, or ordinance of the United States, the Commonwealth of Kentucky, or any of its political subdivisions, or any facts or information relative to actual or suspected mismanagement, waste, fraud, abuse of authority, or a substantial and specific danger to public health or safety.

Ky. Rev. Stat. § 61.102 goes on to define "employer" as: ". . . The Commonwealth of Kentucky or any of its political subdivisions." However, the Whistleblower Act does not define "political subdivision." The parties agree that Jeffersontown is a municipality, or municipal corporation. However, they dispute whether it is a political subdivision of the Commonwealth of Kentucky, and, thus, whether Jeffersontown is an employer under the statute.

In *Consolidated Infrastructure Mgmt. Auth., Inc. v. Allen*, 269 S.W.3d 852 (Ky. 2008), the Kentucky Supreme Court provided guidance as to whether a municipality is a political subdivision for purposes of the Whistleblower Act. In *Allen*, the Kentucky Supreme Court affirmed a jury trial award under the Whistleblower Act to a former Safety Director of the Consolidated Infrastructure Management Authority ("CIMA") of the cities of Russellville and Auburn, who was fired after reporting numerous safety violations in the Auburn facility. *Id.* at 854. The former employee, Thomas Everette Allen, had worked as Safety Director for the City of Russellville before the city

6

joined with the City of Auburn to form CIMA. *Id.* After Allen won his jury award, CIMA dissolved and was absorbed by the cities of Russellville and Auburn. *Id.* at 857.

The court held that the judgment, which was entered against the municipal corporation CIMA, continued to be enforceable against the municipalities of Russellville and Auburn after CIMA dissolved. *Id.* (citing 56 Am. Jur. 2d, *Municipal Corporations, Etc.* § 80 (2008) ("if a municipal corporation goes out of existence by being annexed to, or merged in, another corporation, and if no legislative provision is made respecting the property and liabilities of the corporation which ceases to exist, the corporation to which it is annexed, or in which it is merged, is entitled to all its property and is answerable for all its liabilities")). Thus, the court approved of applying the Whistleblower Act to a municipality by upholding the jury award. Regardless of whether the parties raised the issue, the court would have been obligated to overturn the award if the statute did not apply to the defendants.

In addition, the Supreme Court of Kentucky has said that the Whistleblower Act must be liberally construed to serve its remedial purpose. *Workforce Dev. Cabinet v. Gaines*, 276 S.W.3d 789, 793 (Ky. 2008). In *Gaines*, the court indicated that the purpose of the Whistleblower Act is both "to protect employees who possess knowledge of wrongdoing that is concealed or not publicly known, and who step forward to help uncover and disclose that information" and to discourage wrongdoing in government. *Id.* at 792 (internal citations omitted). In the case at issue, Plaintiffs possessed knowledge of alleged misconduct at the police department that was not publicly known, and they stepped forward to help uncover and disclose that information. Thus, Plaintiffs are the type of employees that the statute was designed to protect.

Defendants point to the doctrine of sovereign immunity, which Kentucky courts have extended to states and counties but not municipalities, to argue that municipalities are not political subdivisions of the state for purposes of the Whistleblower Act. *See, e.g., Withers v. Univ. of Ky.*, 939 S.W.2d 340 (Ky. 1997); *Kentucky Ctr. for the Arts v. Berns*, 801 S.W.2d 327, 331 (Ky. 1990). This Court acknowledges that Kentucky courts have recognized a distinction between municipalities and counties and agencies of the state for purposes of sovereign immunity. At the same time, Kentucky courts have both declined to extend sovereign immunity to a water district, *see Calvert Inv. Inc. v. Louisville & Jefferson County Metro. Sewer Dist.*, 805 S.W.2d 133, 136-37 (Ky. 1991), and found that a water district may be classified as a political subdivision for purposes of the Whistleblower Act. *See Davis v. Powell's Valley Water Dist.*, 920 S.W.2d 75, 78 (Ky. App. 1995). Thus, whether an entity receives sovereign immunity in Kentucky does not appear to be dispositive of whether that entity is a political subdivision for purposes of the Kentucky Whistleblower Act.

Two unpublished federal district court opinions holding that municipalities are not political subdivisions under the Whistleblower Act were decided before the Kentucky Supreme Court provided its guidance in *Allen*. *See Baker v. McDaniel*, No. 07 CV 379, 2008 WL 215241 (E.D. Ky. Jan. 24, 2008); *Nelson v. City of Somerset, et al.*, No. 03 CV 591, R.E. 13 (E.D. Ky. Apr. 5, 2004). Moreover, a federal district court decision is not binding on the Kentucky Supreme Court for purposes of resolving issues of Kentucky state law. Because the role of this Court is to attempt to predict what the Kentucky Supreme Court would do, we are obliged to follow the Kentucky Supreme Court's guidance in *Allen*.

Here, like in *Allen*, Plaintiffs were employed by a municipal corporation, and they were fired after reporting alleged violations committed by that employer. Consequently, like the plaintiffs in

8

*Allen*, they seek to enforce the Kentucky Whistleblower Act against the municipal corporation that fired them. Because Plaintiffs engaged in precisely the type of behavior that the Whistleblower Act is designed to protect, and the Kentucky Supreme Court indicated in *Allen* that the statute is enforceable against municipal corporations, Plaintiffs may proceed with their claim under the Kentucky Whistleblower Act against the City of Jeffersontown.

Accordingly, relying on the guidance provided by the Kentucky Supreme Court, we hold that the district court erred in holding that a municipality is not a political subdivision of the state, and, therefore, is not an employer for purposes of Kentucky's Whistleblower Act, Ky. Rev. Stat. §§ 61.101-103.

## III. First Amendment Claim

The Supreme Court has held that "statements by public officials on matters of public concern must be accorded First Amendment protection despite the fact that the statements are directed at their nominal superiors." *Pickering v. Bd. of Educ. of Township High Sch. Dist. 205*, 391 U.S. 563, 574 88 S. Ct. 1731, 1737, 20 L. Ed. 2d 811 (1968) (citing *Garrison v. State of Louisiana*, 379 U.S. 64, 85 S. Ct. 209, 13 L. Ed. 2d 125 (1964); *Wood v. Georgia*, 370 U.S. 375, 82 S. Ct. 1364, 8 L. Ed. 2d 569 (1962)).

In determining whether a public employer has violated an employee's First Amendment rights of free speech, the Supreme Court has instructed courts to engage in a three-step inquiry. *See Rodgers v. Banks*, 344 F.3d 587, 596 (6th Cir. 2003) (citing *Connick v. Myers*, 461 U.S. 138, 143, 103 S. Ct. 1684, 1688, 75 L. Ed. 2d 708 (1983)). First, a court must determine whether the relevant speech addressed a matter of public concern. *Connick*, 461 U.S. at 143. If the answer is yes, the court must "balance between the interests of the [employee], as a citizen, in commenting upon

9

matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering*, 391 U.S. at 568. Finally, the court must ascertain whether the employee's speech was a substantial or motivating factor in the employer's decision to take the adverse employment action against the employee. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S. Ct. 568, 576, 50 L. Ed. 2d 471 (1977).

First, we must determine whether the relevant speech addressed a matter of public concern. *Connick*, 461 U.S. at 143. The court's inquiry into "[w]hether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147-48. Matters of public concern include speech that "relate[s] to any matter of political, social, or other concern to the community." *Id.* at 146. However, speech dealing with "matters only of personal interest" to a public employee is generally not afforded constitutional protection. *Id.* at 147.

The report alleges that Emington violated federal and state hour laws, generated unnecessary overtime, violated staffing policies of the JPD, failed to contribute to an employee's retirement account, improperly checked employees' controlled substance prescriptions, failed to qualify with her firearm, and committed various acts of mismanagement and abuse. Plaintiffs argue that the report at issue addresses a matter of public concern because it regards the efficiency and operations of the JPD, including violations of state and federal law and the misuse of taxpayer money, while Defendants argue that it does not touch on a matter of public concern because it is merely a litany of petty grievances and complaints rooted in Plaintiffs' dissatisfaction with their supervisor.

This court has consistently held that speech on the same topics as the report at issue–the efficacy and operations of public agencies and allegations of misconduct by public

10

officials–addresses a matter of public concern. *See, e.g., See v. City of Elyria*, 502 F.3d 484, 493 (6th Cir. 2007) (finding that statements involving "alleged corruption in police department investigations, grand jury procedures, funding, and dealing with the press" addressed matters of public concern); *Graham v. City of Mentor*, 118 F. App'x 27, 30 (6th Cir. 2004) (holding that speech regarding police chief's fixing of parking tickets, undeserved bonus and improper comp time, and lack of qualification to carry a weapon addressed matters of public concern); *Chapel v. Montgomery County Fire Prot. Dist. No. 1*, 131 F.3d 564, 576-77 (6th Cir. 1997) (finding that speech regarding fire department's financial mismanagement, nepotism, and need for SOPs and training addressed matters of public concern).

In addition, the fact that seven JPD sergeants and two JPD corporals, in addition to Plaintiffs, had reported allegations of misconduct by Emington indicates that this speech cannot be written off as a "matter only of personal interest" or a few disgruntled employees' "grievance[s] concerning internal office policy." *Connick*, 461 U.S. at 147, 154. Even if the speech was motivated by Plaintiffs' self-interest in affecting who would succeed Chief Roemele, as Defendants claim, this Court has rejected the notion that speech does not touch on a matter of public concern because it is predominantly motivated by self-interest. *Chapel*, 131 F.3d at 574-75. The fundamental issue "is the distinction between *matters* of public concern and *matters* only of personal interest, not civic-minded motives and self-serving motives." *Id.* at 575 (emphasis in original) (internal citation omitted). Thus, Plaintiffs' report addresses a matter of public concern.

Next, under the framework laid out in *Pickering*, we must balance Plaintiffs' interest in making their speech against Defendants' interest in promoting the efficiency of the public services they perform. However, the parties have not briefed the issue and the district court has made no

11

factual findings regarding the balance between Plaintiffs' interest in making their speech and Defendants' interest in efficiently running the JPD. The necessary findings include whether the speech "meaningfully interfere[d] with the performance of [Plaintiffs'] duties, undermine[d] a legitimate goal or mission of the employer, create[d] disharmony among co-workers, impair[ed] discipline by superiors, or destroy[ed] the relationship of loyalty and trust required of confidential employees." *Williams v. Commonwealth of Ky.*, 24 F.3d 1526, 1536 (6th Cir. 1994). Because the parties have presented this Court with no factual bases on which to determine how Plaintiffs' report affected the working dynamic at the JPD, we must remand for the district court to make the findings necessary to determine whether Plaintiffs' speech is protected under the First Amendment. We note that on remand Defendants bear the burden of proving that they had legitimate efficiency interests that outweigh Plaintiffs' speech interests and that they would have reached the same decision even in the absence of the protected conduct. *See Rodgers*, 344 F.3d at 601; *Mt. Healthy*, 429 U.S. at 287.

Accordingly, we hold that the district court erred in granting summary judgment to Defendants and finding that Plaintiffs' speech was not protected by the First Amendment because it did not touch on a matter of public concern, and we remand to the district court to conduct the second and third prongs of the *Pickering* test in a manner consistent with this opinion.

## IV. Qualified Immunity

We review a district court's grant of summary judgment on qualified immunity *de novo*. *Center for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 825 (6th Cir. 2007). In reviewing claims for qualified immunity, we conduct a two-step analysis. *See Scott v. Harris*, 550 U.S. 372, 377 127 S. Ct. 1769, 1774, 167 L. Ed. 2d 686 (2007). First, we consider whether "[t]aken in the light most favorable to the party asserting the injury[,] . . . the facts alleged show the officer's

conduct violated a constitutional right." *Id.* at 377 (quoting *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001)). If the answer is yes, we next ask "whether the right was clearly established . . . in light of the specific context of the case." *Id.* (quoting *Saucier*, 533 U.S. at 201). "For a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003) (internal citations omitted). While the sequence of this two-step inquiry is often appropriate, it is no longer regarded as mandatory. *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009).

In the instant case, the inquiry into whether Mayor Foreman should receive qualified immunity asks whether Foreman violated Plaintiffs' First Amendment rights and whether these rights were clearly established in light of the specific context of this case. Because the finding as to whether Plaintiffs' speech was protected under the First Amendment is a necessary component of step one of the qualified immunity analysis, we must remand on the qualified immunity question in light of the remand on the *Pickering* analysis. After making the factual findings necessary to determine whether Plaintiffs' speech was protected by the First Amendment, the district court shall conduct the qualified immunity analysis in a manner consistent with this opinion.[3]

---

[3]The Court notes that, if the district court find that Plaintiffs' speech was protected by the First Amendment and so Foreman's conduct violated their free speech rights under prong one, the district court should also find that the right was clearly established under prong two. A public employee's First Amendment protection against retaliation for speech on matters of public concern has been clearly established at least since this Court's holding in *Williams v. Commonwealth of Ky.*, 24 F.3d at 1533-38. Foreman himself even acknowledged in his deposition that Plaintiffs each had a constitutional right to speak on matters of public concern regarding police matters. Specifically, the topics of Plaintiffs' speech–violations of state and federal law by a public official and the misuse of taxpayer money within a public agency–address issues that have long been clearly established as matters of public concern. Given that "[a]ll public officials have been charged with knowing that public employees may not be disciplined for engaging in speech on matters of public concern, and

13

## V. The JCSC As a Necessary Party

We review a district court's ruling as to whether a party is a necessary party for an abuse of discretion. *PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 200 (6th Cir. 2001). Under an abuse of discretion standard, we must affirm the district court's Rule 19(a) determination unless it is "left with a definite and firm conviction that the trial court committed a clear error of judgment." *Cincinnati Ins. Co. v. Byers*, 151 F.3d 574, 578 (6th Cir. 1998) (internal citations omitted).

Under Federal Rule of Civil Procedure 19, "whether a party is indispensable for a just adjudication requires a determination regarding whether the absent party is necessary to the litigation; if so, whether the absent party can be joined in the litigation; and if joinder is infeasible, whether the lawsuit can nevertheless proceed 'in equity and good conscience.'" *School Dist. of City of Pontiac v. Sec'y of U.S. Dep't of Educ.*, 584 F.3d 253, 264 (6th Cir. 2009) (en banc) (citing *Kickapoo Tribe v. Babbitt*, 43 F.3d 1491, 1494 (D.C. Cir. 1995)). An absent party must be joined if "in that person's absence, the court cannot accord complete relief among existing parties." Fed. R. Civ. Pro. 19(a)(1)(A).

Plaintiffs argue that they included the JCSC as a Defendant because it is a necessary and indispensable party for purposes of affording complete relief, given that Plaintiffs seek reinstatement to employment. The JCSC was created by ordinance § 35.01 of the City of Jeffersontown, pursuant

no reasonable public official understanding this charge could conclude that [Plaintiffs'] speech did not address such matters," *Chappel*, 131 F.3d at 580, it is clear that if Plaintiffs' speech was protected by the First Amendment, Plaintiffs' right was clearly established in the context of this case.

Furthermore, the large number of factual disputes as to whether Foreman retaliated against Plaintiffs based on their First Amendment activity, as Plaintiffs claim, or was following the protocol that the law requires when investigating complaints directed at personnel of the JPD, as Foreman claims, are precisely the type of subordinate predicate factual questions that must be resolved by a factfinder at trial. *See Johnson v. Jones*, 515 U.S. 304, 313-15, 115 S. Ct. 2151, 132 L. Ed. 2d 238 (1995).

to Ky. Rev. Stat. § 95.761. According to § 35.06, Plaintiffs are employees who are "classified within and subject to the Civil Service Commission," and Chapter 35 lays out the manner in which the Commission oversees the hiring and firing of these employees. (Dist. Ct. R.E. 30 Ex. M). Inasmuch as the JCSC has authority over the hiring of police officers and dispatchers, this Court agrees that the Commission is a necessary party for purposes of providing Plaintiffs with the relief of reinstatement.

However, the district court did not determine whether the JCSC is a necessary party; rather, the district court held that the JCSC was created pursuant to Ky. Rev. Stat. § 95.761 and is not an entity that can be sued without providing any citations in support of this statement. Defendants cite to *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) and *Smallwood v. Jefferson County Gov't*, 743 F. Supp. 502, 503 (W.D. Ky. 1990) in support of their claim that the Commission is not a proper party which may be sued under Plaintiffs' theory of liability. In *Matthews*, the plaintiff sued the chief of police of Jefferson County in the chief's official capacity. This Court first found that "[a] suit against an individual in his official capacity is the equivalent of a suit against the governmental entity," and then held that "[s]ince the Police Department is not an entity which may be sued, Jefferson County is the proper party to address the allegations of [the plaintiff's] complaint." *Id.* at 1049. For the latter holding, this Court cited to *Smallwood*, which held that a suit against the equivalent of the mayor and city council of Jefferson County in their official capacities was the same as a suit against Jefferson County itself because if "a suit against a state official in their [sic] official capacity is regarded as a suit against the state, it seems logical to regard a suit against a County official in their [sic] official capacity as a suit against a County." 743 F. Supp. at 503 (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 109 S. Ct. 2304, 2311, 105 L. Ed. 2d 45 (1989)).

15

Neither case involved a suit against a civil service commission, and neither case provides support for the assertion that the JCSC is not an entity that can be sued pursuant to Ky. Rev. Stat. § 95.761. Furthermore, neither Ky. Rev. Stat. § 95.761 nor Chapter 35 of the Jeffersontown ordinances prohibits suit against the JCSC.

Additionally, authority from the Kentucky state courts indicates that a commission such as the JCSC is a different type of entity from a mayor or police department, and one that is properly party to a suit. *See Timmons v. City of Louisville*, No. 2003-CA-001631-MR, 2004 WL 1857363, at *2 (Ky. Ct. App. June 8, 2005) (finding that Louisville Civil Service Board is "not merely a nominal party" because "the Board is vested with the authority to carry out specific legislative duties and with the responsibility of administering a fair civil service system"); *Vaughn v. City of Paducah*, No. 2008-CA-001549-MR, 2010 WL 135107, at *3-4 (Ky. Ct. App. Jan. 15, 2010) (remanding for joinder of the Civil Service Board of the City of Paducah where the board had sole authority over dismissal of civil service employees); *see also* Jeffersontown, Ky., Ordinances § 35.10(F) ("No employee shall be reprimanded, removed, suspended, or dismissed except as provided in this section.").

Accordingly, we find that the JCSC is a necessary party and hold that the district court abused its discretion in finding that the JCSC is not an entity that can be sued.

## CONCLUSION

For the reasons set forth above, we **VACATE** the district court's order and **REMAND** for further proceedings consistent with this opinion.

16

**RALPH B. GUY, JR.,** **Circuit Judge, dissenting.** I cannot join in the decision to resolve the question of whether the Kentucky Legislature intended that the Kentucky Whistleblower Act apply to cities like Jeffersontown, Kentucky. Our task is to apply Kentucky law, as determined by the Kentucky Supreme Court, to interpret the statute. *Bovee v. Coopers & Lybrand CPA*, 272 F.3d 356, 361 (6th Cir. 2001). When, as here, the state supreme court has not addressed the issue, we must "predict how it would rule, by looking to 'all available data,' including state appellate decisions." *Id*. (citation omitted). Because the available data is inconclusive on this discrete question of statutory interpretation, I believe the best course of action would be to certify the question to the Kentucky Supreme Court. *See* KY. R. CIV. P. 76.37.

The Kentucky Supreme Court has both emphasized the broad remedial purposes of the Whistleblower Act in drawing claims within its coverage, *Workforce Dev. Cabinet v. Gaines*, 276 S.W.3d 789, 792-93 (Ky. 2008), and rejected a more expansive view of the second part of the definition of "employer" on the grounds that the Legislature did not intend to impose individual civil liability on policy makers and managers under the Act, *Cabinet for Families and Children v. Cummings*, 163 S.W.3d 425, 434 (Ky. 2005). Unlike the majority, I cannot conclude that the decision in *Allen* speaks to the issue before us. *Consol. Infrastructure Mgmt. Auth., Inc. (CIMA) v. Allen*, 2006 WL 335816, at *1 (Ky. Ct. App. Feb. 3, 2006) (unpublished), *aff'd* 269 S.W.3d 852, 855 (Ky. 2008).[1] For this reason, I also

---

[1]Liability was established against the CIMA, a combined water/sewer district, for the termination of the plaintiff's employment without any challenge to the CIMA's status as an "employer" under the

believe that *Allen* does not provide a sound basis to reject out-of-hand the federal district court decisions that have squarely addressed the issue. Indeed, a very recent Kentucky decision, albeit unpublished, did not mention the decision in *Allen* but found these same federal court decisions to be persuasive in concluding that a municipality is *not* an "employer" subject to the Whistleblower Act. *See Wilson v. City of Central City*, No. 2008-CA-001547-MR, 2010 WL 135105 (Ky. Ct. App. Jan. 15, 2010).[2]

With respect to the First Amendment retaliation claims, I cannot agree that the plaintiffs' speech—namely, the "Report Pursuant to KRS 61.102"—touched on a matter of public concern. "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Meyers*, 461 U.S. 138, 147-48 (1983). Although the motivations of the speaker are relevant, "the pertinent question is not *why* the employee spoke, but *what* he said." *Farhat v. Jopke*, 370 F.3d 580, 591 ( 6th Cir. 2004). A "passing" or "incidental" reference to an arguably public matter, however, does not elevate the speech to a matter of public concern "where the 'focus' or 'point' of the speech advances only a private interest." *Id*. at 592-93.

---

Whistleblower Act. The CIMA was dissolved shortly after the verdict was returned, and the Kentucky Supreme Court held that it was not error to refuse to require the CIMA to post a bond because the judgment remained enforceable against the cities that had absorbed the CIMA upon its dissolution.

[2]In another case, the state trial court found, *inter alia*, that the defendant city was not an "employer" as defined by the Kentucky Whistleblower Act, but the appellate court did not reach the issue because the plaintiff's claim failed for other reasons. *Throneberry v. City of Audobon Park*, No. 2007-CA-001033-MR, 2008 WL 4530917 (Ky. Ct. App. Oct. 10, 2008) (unpublished).

Looking beyond the superficial assertion of violations of federal and state laws, violations of departmental policy, and acts of mismanagement and abuse of authority, plaintiffs specifically complained that dispatchers were required to report for duty 15 minutes early without receiving overtime pay, that some dispatchers were forced to work overtime so others could attend social events, and that only one dispatcher was left on duty so that everyone else could go out on Secretary's Day. Another charge was that one part-time employee who was not receiving retirement account contributions was retaliated against in the scheduling of shifts for having made the error known. Plaintiffs also alleged improper use of the KASPAR system to monitor employee prescriptions for controlled substances, and challenged whether Emington had satisfied the firearms-qualification requirement. Finally, plaintiffs complained of miscellaneous incidents of both preferential and hostile treatment of employees by Emington.[3]

I agree with the district court that the plaintiffs' expression did not focus on corruption or fraud, which would address a matter of public concern. *See, e.g., See v. City of Elyria*, 502 F.3d 484, 493 (6th Cir. 2007). Rather, the plaintiffs' expression focused on internal

[3]The miscellaneous acts were described as including but not limited to: "accusing an employee of lying about her medical condition and threatening her with termination, deliberately giving an employee an adverse reference to a prospective new employer because she was 'mad at him,' berating officers at crime scenes for their proper actions and undermining the community's respect for those officers and this department, showing favoritism to certain persons employed as clerks by allowing them to clock in late for work and from lunch with no corrective measures, allowing some clerks to not even clock in from lunch if they are extremely late, allowing some clerical person[ne]l to take extremely long lunches with her because they are social friends outside of work, accusing employees without any basis of hiding or obscuring information concerning their military pay, and violating department policies by failing to give civilian employees yearly evaluations."

personnel disputes over pay and scheduling, dissatisfaction with Emington's performance, and complaints about her unfair treatment of subordinates, which are not matters of public concern. *See Brandenberg v. Housing Auth. of Irvine*, 253 F.3d 891, 898 (6th Cir. 2001); *Brown v. City of Trenton*, 867 F.2d 318, 322 (6th Cir. 1989). Accordingly, I would affirm the entry of summary judgment in favor of the defendants with respect to the plaintiffs' First Amendment retaliation claims.