RALPH B. GUY, JR., Circuit Judge,
dissenting.
I cannot join in the decision to resolve the question of whether the Kentucky Legislature intended that the Kentucky Whistleblower Act apply to cities like Jeffersontown, Kentucky. Our task is to apply Kentucky law, as determined by the Kentucky Supreme Court, to interpret the statute. Bovee v. Coopers & Lybrand CPA, 272 F.3d 356, 361 (6th Cir.2001). When, as here, the state supreme court has not addressed the issue, we must “predict how it would rule, by looking to ‘all available data,’ including state appellate decisions.” Id. (citation omitted). Because the available data is inconclusive on this discrete question of statutory interpretation, I believe the best course of action would be to certify the question to the Kentucky Supreme Court. See Ky. R. Civ. P. 76.37.
The Kentucky Supreme Court has both emphasized the broad remedial purposes of the Whistleblower Act in drawing claims within its coverage, Workforce Dev. Cabinet v. Gaines, 276 S.W.3d 789, 792-93 (Ky.2008), and rejected a more expansive view of the second part of the definition of “employer” on the grounds that the Legislature did not intend to impose individual civil liability on policy makers and managers under the Act, Cabinet for Families and Children v. Cummings, 163 S.W.3d 425, 434 (Ky.2005). Unlike the majority, I cannot conclude that the decision in Allen speaks to the issue before us. Consol. Infrastructure Mgmt. Auth, Inc. (CIMA) v. Allen, 2006 WL 335816, at * 1 (Ky.Ct. App. Feb.3, 2006) (unpublished), aff'd 269 S.W.3d 852, 855 (Ky.2008).[1] For this rea *572 son, I also believe that Allen does not provide a sound basis to reject out-of-hand the federal district court decisions that have squarely addressed the issue. Indeed, a very recent Kentucky decision, albeit unpublished, did not mention the decision in Allen but found these same federal court decisions to be persuasive in concluding that a municipality is not an “employer” subject to the Whistleblower Act. See Wilson v. City of Central City, NO.2008-CA-001547-MR, 2010 WL 135105 (Ky.Ct.App. Jan.15, 2010).[2]
With respect to the First Amendment retaliation claims, I cannot agree that the plaintiffs’ speech — namely, the “Report Pursuant to KRS 61.102” — touched on a matter of public concern. “Whether an employee’s speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record.” Connick v. Myers, 461 U.S. 138, 147-48, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). Although the motivations of the speaker are relevant, “the pertinent question is not why the employee spoke, but what he said.” Farhat v. Jopke, 370 F.3d 580, 591 (6th Cir.2004). A “passing” or “incidental” reference to an arguably public matter, however, does not elevate the speech to a matter of public concern “where the ‘focus’ or ‘point’ of the speech advances only a private interest.” Id. at 592-93.
Looking beyond the superficial assertion of violations of federal and state laws, violations of departmental policy, and acts of mismanagement and abuse of authority, plaintiffs specifically complained that dispatchers were required to report for duty 15 minutes early without receiving overtime pay, that some dispatchers were forced to work overtime so others could attend social events, and that only one dispatcher was left on duty so that everyone else could go out on Secretary’s Day. Another charge was that one part-time employee who was not receiving retirement account contributions was retaliated against in the scheduling of shifts for having made the error known. Plaintiffs also alleged improper use of the KASPAR system to monitor employee prescriptions for controlled substances, and challenged whether Emington had satisfied the-firearms-qualification requirement. Finally, plaintiffs complained of miscellaneous incidents of both preferential and hostile treatment of employees by Emington.[3]
I agree with the district court that the plaintiffs’ expression did not focus on cor *573 ruption or fraud, which would address a matter of public concern. See, e.g., See v. City of Elyria, 502 F.3d 484, 493 (6th Cir.2007). Rather, the plaintiffs’ expression focused on internal personnel disputes over pay and scheduling, dissatisfaction with Emington’s performance, and complaints about her unfair treatment of subordinates, which are not matters of public concern. See Brandenburg v. Housing Auth. of Irvine, 253 F.3d 891, 898 (6th Cir.2001); Brown v. City of Trenton, 867 F.2d 318, 322 (6th Cir.1989). Accordingly, I would affirm the entry of summary judgment in favor of the defendants with respect to the plaintiffs’ First Amendment retaliation claims.

. Liability was established against the CIMA, a combined water/sewer district, for the termination of the plaintiff's employment without any challenge to the CIMA’s status as an “employer” under the Whistleblower Act. The CIMA was dissolved shortly after the verdict was returned, and the Kentucky Supreme Court held that it was not error to refuse to require the CIMA to post a bond because the *572 judgment remained enforceable against the cities that had absorbed the CIMA upon its dissolution.

. In another case, the state trial court found, inter alia, that the defendant city was not an "employer” as defined by the Kentucky Whistleblower Act, but the appellate court did not reach the issue because the plaintiff's claim failed for other reasons. Throneberry v. City of Audubon Park, No.2007-CA-001033-MR, 2008 WL 4530917 (Ky.Ct.App. Oct. 10, 2008) (unpublished).

. The miscellaneous acts were described as including but not limited to: "accusing an employee of lying about her medical condition and threatening her with termination, deliberately giving an employee an adverse reference to a prospective new employer because she was 'mad at him,' berating officers at crime scenes for their proper actions and undermining the community's respect for those officers and this department, showing favoritism to certain persons employed as clerks by allowing them to clock in late for work and from lunch with no corrective measures, allowing some clerks to not even clock in from lunch if they are extremely late, allowing some clerical person[ne]l to take extremely long lunches with her because they are social friends outside of work, accusing employees without any basis of hiding or obscuring information concerning their military pay, and violating department policies by failing to give civilian employees yearly evaluations.”