RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 11a0304p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

RON WESTMORELAND,

                *Plaintiff-Appellant,*

      *v.*

DEBORAH L. SUTHERLAND, individually and
in her official capacity as Mayor of the City
of Bay Village, Ohio; CITY OF BAY VILLAGE,
OHIO,

              *Defendants-Appellees.*

No. 10-3766

> Appeal from the United States District Court
> for the Northern District of Ohio at Cleveland.
> No. 08-02581—Patricia A. Gaughan, District Judge.
>
> Argued: November 18, 2011
>
> Decided and Filed: December 6, 2011
>
> Before: MARTIN, GUY, and GRIFFIN, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Avery S. Friedman, FRIEDMAN & ASSOCIATES, Cleveland, Ohio, for
Appellant. Keith A. Savidge, SEELEY, SAVIDGE, EBERT & GOURASH CO., LPA,
Cleveland, Ohio, for Appellees. **ON BRIEF:** Avery S. Friedman, FRIEDMAN &
ASSOCIATES, Cleveland, Ohio, for Appellant. Keith A. Savidge, Gary A. Ebert, Eric
D. Baker, SEELEY, SAVIDGE, EBERT & GOURASH CO., LPA, Cleveland, Ohio, for
Appellees.

_____

## OPINION

_____

      RALPH B. GUY, JR., Circuit Judge. Plaintiff Ron Westmoreland, a firefighter,
appeals from the entry of summary judgment in favor of his employer, the City of Bay

1

Village and its Mayor Deborah L. Sutherland, with respect to his claim that he was unlawfully disciplined in retaliation for having exercised his First Amendment rights. *See* 42 U.S.C. § 1983. The district court found that plaintiff's speech was not protected by the First Amendment because, although he had spoken as a private citizen regarding matters of public concern, his comments included intentionally or recklessly false statements attributing the drowning of a seven-year-old boy to the elimination of the Bay Village Fire Department's Dive/Rescue Team. *See Westmoreland v. Sutherland*, 718 F. Supp. 2d 884 (N.D. Ohio 2010). With respect to his individual capacity claim, the district court found that the Mayor was entitled to qualified immunity because it was at least reasonable to believe that the statements were intentionally or recklessly false. For the reasons explained below, we reverse the judgment and remand for further proceedings consistent with this opinion.

## I.

The City of Bay Village, located west of Cleveland along Lake Erie, operated a Fire Department with roughly twenty-four firefighters. Budget concerns in the spring of 2008 led to the adoption of changes that substantially reduced overtime for firefighters. In addition, Fire Chief James Sammon, a firefighter for more than thirty years, recommended that the dive team be eliminated. His recommendation was adopted by Mayor Sutherland and approved by the Bay Village City Council. Chief Sammon explained by way of affidavit that the dive team had been used an average of less than once per year, had never actually rescued anyone, and had cost between $10,000 and $12,000 in overtime annually. Also, he determined that between 1999 and 2007, the City had purchased a total of more than $26,000 in diving gear and equipment from plaintiff's for-profit dive business.

When the dive team was officially disbanded in June 2008, Chief Sammon distributed a memorandum to all personnel outlining new procedures for the use of mutual aid dive teams from the Cleveland Metroparks Rangers and the adjacent cities of Rocky River and Avon Lake. Tragically, two drowning incidents in or near Bay Village followed. Plaintiff was not working when a twelve-year-old boy drowned at

Columbia Beach on August 9, 2008, but plaintiff responded to the scene where a seven-year-old boy drowned at Huntington Beach on September 1, 2008. Huntington Beach, part of the Cleveland Metroparks, is located within the City of Bay Village.

Two weeks later, on September 15, 2008, plaintiff spoke for a total of about eight minutes during the public comment segment of a regular Bay Village City Council meeting.[1] Plaintiff, off duty and not in uniform, identified himself as a sixteen-year veteran of the Bay Village Fire Department, a former member of its disbanded dive team, an international public safety diving trainer, and an expert in public safety diving. Plaintiff had been the instructor of the Bay Village dive team, and had instructed firefighters from other area communities. The district court characterized the speech as follows:

> The thrust of plaintiff's speech [was] directed at the City's decision to cut funding for certain safety services and the outcomes resulting from those decisions. Throughout his speech, plaintiff mentions not only the dive team, but cuts to training for safety personnel and difficulties resulting from the "shuffling of ambulances." These are undoubtedly matters of public concern.

*Westmoreland*, 718 F. Supp. 2d at 891. Plaintiff also spoke pointedly about the drowning on September 1, asking, "how many children have to die before Council and the administration understands," and claiming that they had been warned that it would be "not if, but when" there would be a loss of life because of the cuts.

Defendants took particular umbrage at the following highlighted statements, quoted in context:

> "You keep rolling the dice, hoping everything will be alright. You cut our manning, you cut our training, and you cut money in various places, which is not my responsibility. But my responsibility lies with the citizens of Bay Village. . . . They pay the taxes that pay all of our salaries. *Now a seven year old kid is dead, that last year would have been found in about twenty minutes by the Bay Village Dive Team.* It is

---

[1]The City prepared a narrative transcription of plaintiff's commentary, the accuracy of which is not disputed. A transcript of the audio recording also in the record is incomplete, with many places noted as "inaudible," but is generally consistent with the City's transcription.

my personal opinion, *this Council, this administration is partly responsible for condemning that child to death. . . .* I was in charge of the first responding vehicle at the drowning. My first call was the Avon Lake Fire Department and Rocky River Dive Teams. They weren't going to get there in time. Ignorance is bliss. . . . That child never had a chance. *I knew I was watching a seven year old boy being condemned to death because we had no dive team. We could not go get this kid.* We had two helicopters flying around. We had two Jet Skis sailing around. We had two boats going around. Let me make something clear. The child was on the bottom. *Divers have to go and get him. . . .* Bay Village Firemen placed themselves at great personal risk that day, many of them, without proper training, without proper equipment, and refused to give up. . . . That's my personal opinion. *You don't care. That's why I am speaking today.* I am here for the safety of the people here. The citizens, the firemen, the policemen, the park rangers, the people that come into this city and spend money to go to your beaches. We were the responding crew to that beach. The rangers know they can't get there in time. We can. That is in our city but we did nothing to help these people. *The citizens need to know that their safety is jeopardized by the cuts in the manpower and the funding for the safety forces. . . .* I don't know where you put your money and I really don't care but when people are dying I hope you will start to take some kind of notice. In closing, *what price did you put on a child's life? How much did you save? Did you save enough that it was worth letting a seven year old die?* I know you won't answer me. I hope you answer the mother some day, because I know you will be hearing from her again. . . . When you go home tonight I hope you tell your kids and your spouse that you did a good job. *A little boy had to die but you guys saved some money.* You saved some money. Is there going to be a third one before you guys wake up?"

(Emphasis added.) Plaintiff ended his address, saying that the citizens needed to be kept more informed, that the firefighters were doing what they could, but that "what happened that day on the beach, we couldn't do the job because we didn't have our tools. We couldn't do our job because we didn't have our manpower. You were warned it's not if, it's when. It's going to happen again." Plaintiff's comments were immediately followed by the City Council President's statement that, as an elected official, he would defend plaintiff's right to express his opinion, although that did not mean he necessarily agreed with him.

On October 9, 2008, Mayor Sutherland, who was a candidate in a contested election for County Commissioner, ordered plaintiff to serve a three-tour unpaid

suspension—the equivalent of three twenty-four hour shifts—on the grounds that plaintiff's statements at the City Council meeting constituted insubordination, malfeasance, misfeasance, dishonesty, failure of good behavior, and conduct unbecoming of an officer. The Notice of Disciplinary Action explained that plaintiff made numerous statements that were "misstatements, fabrications, insulting and inciteful," and none of which were "supported by the facts." The suspension was imposed pursuant to the progressive discipline policy because plaintiff had previously received a letter of reprimand for making inappropriate comments to a group of juveniles at a community diversion program.

After a third-step grievance hearing held on October 22, 2008, the Mayor affirmed plaintiff's suspension in a written decision dated November 5, 2008. Plaintiff's claim that his speech was protected by the First Amendment was rejected on the grounds that his "statements contained many falsehoods about the operation of the Fire Department and the circumstances surrounding the September tragedy at Metroparks Huntington Beach." The Mayor also found that plaintiff was aware that his statements were false "[d]ue to internal communications from Chief Sammon regarding the backup for the Dive Team."

Plaintiff filed this two-count complaint while awaiting decision on his grievance, and requested binding arbitration once the grievance was denied. An arbitrator upheld the suspension in July 2009, finding that the speech was not constitutionally protected. Defendants successfully moved to dismiss plaintiff's procedural due process claim, which is not at issue in this appeal. In March 2010, defendants moved for summary judgment on the remaining First Amendment claim, and plaintiff filed a response that also sought summary judgment in his favor. Affidavits and exhibits were submitted by plaintiff and the defendants. For the reasons set forth in the opinion and order entered on June 11, 2010, the district court granted summary judgment to the defendants. This appeal followed.

## II.

We review the district court's grant of summary judgment *de novo*, viewing the factual evidence and all the reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Bishop v. Children's Ctr. for Developmental Enrichment*, 618 F.3d 533, 536 (6th Cir. 2010). Summary judgment is appropriate when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a).

In a § 1983 action, the plaintiff must demonstrate a deprivation of a right secured by the Constitution or laws of the United States caused by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). To establish a First Amendment retaliation claim, the plaintiff must show that he engaged in constitutionally protected speech; that he suffered an adverse action likely to chill a person of ordinary firmness from continuing to engage in protected speech; and that the protected speech was a substantial or motivating factor in the decision to take the adverse action. *See Pucci v. Nineteenth Dist. Court*, 628 F.3d 752, 768 (6th Cir. 2010). This appeal concerns only the question of whether plaintiff, a public employee, engaged in speech protected by the First Amendment, or whether a reasonable official would have believed that plaintiff had not. There being no factual dispute regarding what was said, this court treats the question of whether a public employee's speech is protected as a question of law. *Fox v. Traverse City Area Pub. Sch. Bd. of Educ.*, 605 F.3d 345, 350-51 (6th Cir.), *cert. denied*, 131 S. Ct. 643 (2010); *Farhat v. Jopke*, 370 F.3d 580, 589 (6th Cir. 2004).

"[T]he First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006); *see also Connick v. Meyers*, 461 U.S. 138, 143 (1983). To establish that his speech was constitutionally protected, a public employee must show that he was speaking as a private citizen, rather than pursuant to his official duties; that his speech involved a matter of public concern; and, if so, that his interest as a citizen in commenting on the matter outweighed "'the interest of the State, as an

employer, in promoting the efficiency of the public services it performs through its employees.'" *Garcetti*, 547 U.S. at 417 (quoting *Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205*, 391 U.S. 563, 568 (1968)).

## A.	Speaking as Private Citizen on a Matter of Public Concern

Defendants renew their unsuccessful argument that plaintiff did not speak "as a citizen" nor on a "matter of public concern." We find that the district court made no error in this regard.

*Garcetti* clarified what it means to "speak as a citizen" by holding that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* at 421. Although plaintiff identified himself as a public employee, he appeared off duty, out of uniform, and at a public meeting to address the Mayor and City Council during the public comment period. Nothing in the record supports the claim that plaintiff's expression was made pursuant to a task that was within the scope of his official duties. *See*, *e.g.*, *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 544 (6th Cir. 2007) (holding statements made to a consultant hired by employer to evaluate workplace issues were made within the scope of employee's official duties).

*Connick* instructed that speech involves a matter of public concern when it can fairly be considered to relate to "any matter of political, social, or other concern to the community." *Connick*, 461 U.S. at 146. "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Id*. at 147-48. Nor is it necessary for the entire expression to address matters of public concern, as long as some portion of the speech does. *Id*. at 149. While motive for the speech is a relevant factor, this court has explained that "the pertinent question is not *why* the employee spoke, but *what* he said." *Farhat*, 370 F.3d at 591.

Defendants argue that, although plaintiff's speech was couched in terms of concern about the drowning death, it was motivated by plaintiff's financial loss of overtime and business, and communicated "nothing more than 'the quintessential employee beef: management has acted incompetently.'" *Fox*, 605 F.3d at 349 (quoting *Haynes v. City of Circleville*, 474 F.3d 357, 365 (6th Cir. 2007)). Plaintiff denied that his speech was motivated by financial or personal interest, claiming that he "*never* advocated for overtime or equipment for [him]self as a priority over safety and security of the citizens [of Bay Village]." Plaintiff stated that his business earned only $600 to $700 in profits annually from sales to Bay Village—although neither party has indicated how much plaintiff may have lost in overtime pay—and attested that, as "the highest credentialed dive rescue official in Bay Village, [he] wanted to state to [the] city council in the strongest terms the public concern over the detrimental effect of removing dive rescue capacity." (Doc. 42-2, p. 2.)

Although plaintiff's comments were highly critical of the Mayor and City Council, the "focus," "point," or "communicative purpose" of plaintiff's speech was to express his opinion, as an expert in public safety diving, that the cuts to the Fire Department, especially the elimination of the dive team, had jeopardized public safety and hamstrung the rescue effort on September 1. *See Farhat*, 370 F.3d at 591. Nor can plaintiff's speech be said to have addressed "matters only of personal interest." *Connick*, 461 U.S. at 147. That the comments were made publicly to the City Council, rather than in a memo sent solely to his superior, supports this conclusion. *Cf. Haynes*, 474 F.3d at 364 (holding that officer's memo addressed solely to his superior and expressing discontent about financial cutbacks and changes to a program he directed was not protected speech). As the district court found, the substance of plaintiff's expression undoubtedly involved matters of public concern.

**B.          Knowingly or Recklessly False Statements**

In *Pickering*, a teacher wrote a letter to a local newspaper criticizing the school board and the superintendent's handling of past bond issue proposals, which included both substantially correct and erroneous statements of fact. *See Pickering*, 391 U.S. at

564. The Court held that the teacher's erroneous statements, which were critical of his employer but did not impede the teacher's performance or interfere with the school's operation, could not serve as the basis for his dismissal. *Id.* at 572-75. The Court explained that, "in a case such as this, *absent proof of false statements knowingly or recklessly made by him*, a teacher's exercise of his right to speak on issues of public importance may not furnish the basis for his dismissal from public employment." *Id.* at 574 (emphasis added).[2] Plaintiff argues that the district court erred in finding: (1) that the *Pickering* balancing is inapplicable when an employee made knowingly or recklessly false statements; and (2) that plaintiff's statements were knowingly or recklessly false.

First, as the district court observed, other courts have divided over whether intentionally or recklessly false statements fall outside the protection of the First Amendment, or whether such falsity is to be weighed as part of the *Pickering* balancing. *Westmoreland*, 718 F. Supp. 2d at 892 (discussing cases). Although this court has not explicitly addressed the issue, the district court found that our discussion in *See v. City of Elyria*, 502 F.3d 484, 492-93 (6th Cir. 2007), "strongly implie[d] that where an employee intentionally or recklessly makes false statements, the speech is not a matter of public concern and, as such, the *Pickering* balancing test is inapplicable." *Westmoreland*, 718 F. Supp. 2d at 893.

*See* outlined the showing required for a public employee to state a First Amendment retaliation claim, explaining that "it does not matter if the employee's suspicions were subsequently shown to be correct, as long as the statements were of public concern *and* not false statements deliberately or recklessly made." *See*, 502 F.3d at 492 (emphasis added). After discussing the factors to be analyzed in performing the *Pickering* balancing, this court explained that:

> [A]lthough the truthfulness of the employee's statements is not relevant
> in determining whether the speech involves a matter of public concern
> (*unless, of course, the employee intentionally or recklessly made false*

---

[2]The Court declined "to pass upon the additional question whether a statement that was knowingly or recklessly false would, if it were neither shown nor could reasonably be presumed to have had any harmful effects, still be protected by the First Amendment." *Id.* at n.6.

*statements*), the truthfulness of such statements may be relevant . . . in striking the appropriate balance between the employee's right to free speech and the employer's interest in efficient administration.

*Id*. at 493 (emphasis added).  Contrary to plaintiff's assertion on appeal, *See* cannot be disregarded or distinguished merely as a qualified immunity case.  Moreover, the only reasonable implication of this language is that *Pickering* balancing is not required if it is determined that the employee made statements with knowledge of, or reckless indifference to, their falsity.  *See also Williams v. Commonwealth of Ky.*, 24 F.3d 1526, 1535 (6th Cir. 1994) (describing *Pickering* as "declin[ing] to extend protection to false statements that are knowingly or recklessly made").

Second, we have specifically held that "[a] public employee is not required to prove the truth of his speech in order to secure the protections of the First Amendment." *Chappel v. Montgomery Cnty. Fire Prot.*, 131 F.3d 564, 576 (6th Cir. 1997).  Rather, "it is the defendants' burden to establish that [plaintiff] knew or was recklessly indifferent to the fact that his speech was false."  *Id.*; *see also Farhat*, 370 F.3d 591. Plaintiff contends that the district court overlooked or ignored evidence that contradicted Chief Sammon's assertion that plaintiff made intentionally or recklessly false statements.

Plaintiff disputes the defendants' claim that the primary function of the dive team was not rescue, but recovery, emphasizing that the vehicle was marked "DIVE/RESCUE UNIT" and that its stated purpose was "underwater search and rescue or body recovery of drowning victims."  The efforts made to revive the child once found, as well as airlifting him to a hospital for further treatment, supported plaintiff's claim that it was a rescue effort.  The district court found that "even if a question of fact exists as to the nature of the dive team, this does not alter the fact that in this particular case divers were available but not utilized."  *Westmoreland*, 718 F. Supp. 2d at 894.

Obviously relying on Chief Sammon's affidavit, the district court concluded that "plaintiff, at a minimum, was reckless in attributing the death of the child to the lack of a dive team."  *Id*.  In particular, the district court emphasized that plaintiff was present and aware of the details of the rescue effort; that approximately twelve divers responded

but none were deployed because the child was found in three feet of water using the "human chain" approach; that the dive team had never rescued anyone; and that, because it took 30 minutes to establish control of the scene, it would not have been possible for the Bay Village dive team to "save the child within 'twenty minutes.'" *Id.* The district court characterized these facts as undisputed and found plaintiff had "offer[ed] no evidence or argument as to how the existence of a Bay Village dive team would have had any impact whatsoever on saving the child's life." *Id.* at 893.

The record reflects, however, that plaintiff did offer evidence to support his belief that the lack of a dive team meant that the child did not have a chance of being rescued. Plaintiff explained by way of affidavit that, although there were twelve divers on the scene, those divers did not arrive until more than one hour after the 9-1-1 call, "making them ineffective for a rescue." Also, although Huntington Beach is under the jurisdiction of the Metroparks, plaintiff stated that Bay Village Fire Department responded to the scene and "3 minutes after being dispatched, two [former] rescue divers, [plaintiff] being one, were at the scene and, as the highest ranking fire official, [plaintiff] was in command under Ohio Fire Code 104.11." Plaintiff disputed the assertion that it took thirty minutes to establish command, stating instead that it took thirty minutes for a captain to arrive and take over command from him. Plaintiff also stated that he could have had a dive team in the water within twenty minutes since he had done so previously in training. Moreover, plaintiff stated that the "'human chain' explanation [was] also misleading because the child was found in 3 feet of water *one and one half hours later* in five foot waves" and had been "washed in significantly after the rescue effort started." Finally, plaintiff explained that his statement about the child being found in about twenty minutes meant "he would have been found earlier and therefore had a chance."

Keeping in mind that plaintiff is not required to prove that his statements are true and that defendants must prove that the statements were not only false, but were made with intentional or reckless disregard for the truth, it was error to conclude on this record that plaintiff made intentionally or recklessly false statements. Plaintiff presented

evidence that he had reason to believe that, if not disbanded, the Bay Village Rescue/Dive Team would have responded sooner, could have found the child in the water sooner, and might have given the child a chance of surviving. Nor is an intentional or reckless disregard for the truth shown by the fact that the divers who arrived later were not deployed before the child was found. Despite plaintiff's inflammatory rhetoric that the budget cuts were "partly responsible for condemning that child to death,"[3] defendants have not shown that it was intentionally or recklessly false for plaintiff to claim that the rescue effort was hamstrung because Bay Village no longer had a dive team.

Since this was the basis for concluding that plaintiff's speech was not protected, that the *Pickering* balancing weighed against plaintiff, and that a reasonable official would believe the speech was not protected, the decision granting summary judgment to the defendants is **REVERSED** and the case is **REMANDED** for further proceedings consistent with this opinion, including, but not limited to, whether the challenged statements were, in fact, false; whether any false statements were knowingly or recklessly made; whether a reasonable official would have believed any false statements were knowingly or recklessly made; and, if necessary, whether—taking into account any falsity—plaintiff's interest in speaking as a citizen on a matter of public concern outweighed the defendants' interest in promoting the efficiency of the public services it performs through its employees.

---

[3]We recognize that the district court did not reach and the parties did not address the extent to which some of the statements may be protected opinion. *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990) ("a statement of opinion relating to matters of public concern which does not contain a provably false factual connotation will receive full constitutional protection" and protection extends to statements that cannot reasonably be interpreted as stating actual facts).