NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0114n.06

No. 10-2602

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
*Jan 31, 2012*
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| JAMES KIESSEL, et al., | ) | |
| | ) | |
| Plaintiffs-Appellees, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE WESTERN DISTRICT OF |
| | ) | MICHIGAN |
| MICHAEL OLTERSDORF, | ) | |
| Leelanau County Sheriff, et al., | ) | OPINION |
| | ) | |
| Defendants-Appellants. | ) | |
| | ) | |

Before: BOGGS and STRANCH, Circuit Judges; and THAPAR, District Judge.*

AMUL R. THAPAR, District Judge.

The plaintiffs in this case allege, among other things, a First Amendment retaliation claim under § 1983 against the Sheriff and Undersheriff of Leelanau County, Michigan. The Sheriff and Undersheriff now appeal the district court's summary-judgment order denying their request for qualified immunity. We affirm.

**I.**

Many law enforcement organizations, including the Leelanau County Sheriff's Office, automatically record telephone calls. The phones in the Leelanau Sheriff's Office, however, had a button marked "Private Out." This label was a misnomer. The phone company, not the Sheriff's Office, placed the "Private Out" label on the phones, and the button had no function. Thus, the telephone system recorded calls made on the "Private Out" line. R. 182-1 at 6.

---

* The Honorable Amul R. Thapar, United States District Judge for the Eastern District of Kentucky, sitting by designation.

In January 2008, two of the plaintiffs, Sergeant James Kiessel and Sergeant Michael Lamb, reported to the FBI and the Michigan State Police that Sheriff Mike Oltersdorf and Undersheriff Scott Wooters were illegally eavesdropping on employees' phone conversations. *See* R. 181-1 at 7. Kiessel and Lamb alleged that the Sheriff and Undersheriff violated their privacy by listening to their phone calls made on the "Private Out" line.

In response, the Sheriff and Undersheriff cited the office's Information Technology policy, which stated that employees have "no 'Expectation of Privacy'" in the use of office technology equipment, including the telephone. R. 182-4 ¶ 2. They further noted that the Employee Code of Conduct exempted "[a]gency recorded telephone lines" from the Code's prohibition on eavesdropping. Code of Conduct, R. 182-3 § IV(A)(21). In April 2008, the Michigan Attorney General advised the Sheriff and Undersheriff that they had not broken the law, and Sheriff Oltersdorf informed his office's employees of the opinion.

A public debate ensued. First, the *Traverse City Record-Eagle* published an article in June 2008 that quoted Sheriff Oltersdorf defending the recording policy. Plaintiffs Kiessel and Bankey responded with a letter to the editor of the paper. They claimed the Sheriff had committed "misconduct" and "unlawful actions" and that he had authorized Undersheriff Wooters to listen in on "official business conversations having to do with union functions that are federally protected under labor law." *Id.* Six months later, Oltersdorf suspended Kiessel and Bankey for forty hours without pay for conduct unbecoming an officer because they had made "false public accusations of unlawful conduct by the Leelanau County Sheriff." R. 183-4. A year later, the Sheriff's Office discharged Plaintiffs Kiessel, Lamb, and Wright.

2

The plaintiffs, all sheriff's deputies who belong to a labor union, alleged nine claims against Oltersdorf and Wooters, including retaliation in violation of their First Amendment rights. *See* R. 89. In addition to the letter to the newspaper, the plaintiffs claimed that the First Amendment protected their initial report to the Michigan State Police and the FBI, a letter they wrote to the Leelanau County Board of Commissioners in April 2008, and their union activities. R. 89 ¶ 100. At oral argument, the defendants stated they are only pursuing the claim that the First Amendment does not protect the plaintiffs' letter and their union activities.

## II.

***Jurisdiction.*** As an initial matter, the plaintiffs argue that this court lacks jurisdiction to hear this appeal because of its interlocutory nature. They are incorrect. Interlocutory appeal is available when qualified immunity claims turn on issues of law rather than fact. *Berryman v. Rieger*, 150 F.3d 561, 563 (6th Cir. 1998). Here, the defendants claim that the plaintiffs' actions—their letter to the editor and union activities—are not matters of public concern. Whether speech relates to a matter of public concern, and thus qualifies for First Amendment protection, is a legal question. *See Connick v. Myers*, 461 U.S. 138, 148 n.7 (1983) ("The inquiry into the protected status of speech is one of law, not fact."). This court, therefore, has jurisdiction and will review the district court's denial of summary judgment on qualified-immunity grounds de novo. *Hayden v. Green*, 640 F.3d 150, 153 (6th Cir. 2011).

## III.

3

Law enforcement officials would be unable to carry out their duties if litigation threatened them at every turn. Qualified immunity provides a shield from liability, but only insofar as government officials' "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Courts apply a two-prong test to determine if a defendant can receive qualified immunity: first, whether the defendant violated the plaintiff's constitutional rights, when the allegations are considered in the light most favorable to the plaintiff, and second, whether those rights were clearly established. *Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009). Even on interlocutory appeal, the plaintiff bears the burden of showing that the defendant is not entitled to qualified immunity. *Garretson v. City of Madison Heights*, 407 F.3d 789, 798 (6th Cir. 2005).

The First Amendment protects public employees from retaliation based on their speech, but only under certain conditions. To establish a First Amendment retaliation claim, a public employee must show (1) that he engaged in constitutionally protected speech; (2) that his employer's disciplinary action would have chilled an ordinary person from exercising their First Amendment rights; and (3) that the protected speech was a "substantial or motivating" factor in his employer's disciplinary decision. *Westmoreland v. Sutherland*, 662 F.3d 714, 718 (6th Cir. 2011).

## A. Protected Speech

"[T]he First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Id*. (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006)). A "matter of public concern" is one that involves "issues about

4

which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government." *Brandenburg v. Housing Auth. of Irvine*, 253 F.3d 891, 898 (6th Cir. 2001) (quoting *McKinley v. City of Eloy*, 705 F.2d 1110, 1114 (9th Cir. 1983)). For example, a letter reporting a local water treatment plant's violation of environmental regulations to a state agency addresses a matter of public concern. *See Charvat v. E. Ohio Reg'l Wastewater Auth.*, 246 F.3d 607, 617-18 (6th Cir. 2001). But speech addressing "matters only of personal interest" is generally not of public concern. *Connick*, 461 U.S. at 147. The motive for the speech is relevant but not dispositive of this inquiry. *Westmoreland*, 662 F.3d at 719.

*The Newspaper Letter.* In their letter, the plaintiffs claimed that the defendants violated the law. Indeed, the letter emphasized that the defendants engaged in "unlawful" and "illegal" conduct. And, when public employees allege that government officials break the law, their speech addresses a matter of public concern. *See v. City of Elyria*, 502 F.3d 484, 493 (6th Cir. 2007) ("Statements exposing possible corruption in a police department are exactly the type of statements that demand strong First Amendment protection."); *Lucas v. Monroe County*, 203 F.3d 964, 974 n.5 (6th Cir. 2000) ("Certainly speech which questions the credibility of the Sheriff's Department . . . is a matter of political concern"); *Marohnic v. Walker*, 800 F.2d 613, 616 (6th Cir. 1986) ("Public interest is near its zenith when ensuring that public organizations are being operated in accordance with the law.").

In response, the defendants claim that the plaintiffs' reference to illegal conduct was "passing" or "fleeting" and "incidental to the message conveyed." Appellants' Reply Br. at 7. *Cf. Farhat v. Jopke*, 370 F.3d 580, 592-93 (6th Cir. 2004) (holding a public employee's

5

speech was not protected when the speech contained only "fleeting" references of public corruption because the main "focus" or "point" of the speech was the employee's personal situation). To be sure, the plaintiffs' letter did not elaborate on why the sheriffs' actions were unlawful or what laws they broke. But accusations of corruption in a police department are "exactly the type of statements that demand strong First Amendment protections." *Elyria*, 502 F.3d at 493. In *Connick*, for instance, only one of fourteen questions on a questionnaire dealt with corruption, but that question alone sufficed for the questionnaire to relate to a public concern. 461 U.S. at 149. By contrast, here the entire thrust of the plaintiffs' letter is the sheriffs' "illegal" eavesdropping on "private" conversations. The Sheriff recognized it as such, telling the plaintiffs that they did not "have the right to make false public accusations of unlawful conduct" by the Sheriff. R. 183-4. There is simply nothing "fleeting" or "incidental" about it. Moreover, the letter was expressly responding to a newspaper article about the sheriffs' phone recordings, further demonstrating the issue to be one of public concern. *Lucas*, 203 F.3d at 974 & n.5.

A public employer may nonetheless restrict constitutionally protected speech if the employer's legitimate interests in "promoting the efficiency" of public services outweigh the employee's First Amendments interests. *Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205*, 391 U.S. 563, 568 (1968). The defendants did not make this argument, and no extraordinary reason exists for this court to do it for them. *See, e.g.*, *Chappel v. Montgomery Cnty. Fire Prot. Dist. No. 1*, 131 F.3d 564, 579 (6th Cir. 1997) (declining to consider government defendant's efficiency argument for first time on appeal).

***Union Activities.*** The defendants also argue that the First Amendment does not protect the plaintiffs' union activities. *See Boals v. Gray*, 775 F.2d 686, 693 (6th Cir. 1985). But this is not an independent claim. Rather, the complaint includes one count of First Amendment retaliation, encompassing the letter, the union activities, and the plaintiffs' report to law enforcement, among other things. *See* Third Am. Compl., R. 89 at 23. Because the newspaper letter was protected speech, we do not need to decide whether the plaintiffs' union activities were also protected.

## B. Plaintiffs' Protected Speech as Motivating Factor for Adverse Action

The defendants do not dispute that the plaintiffs have suffered adverse action. Therefore, all that remains is for the plaintiffs to show that their protected speech motivated the defendants' adverse action against them. Again, the plaintiffs easily meet this evidentiary threshold. When Sheriff Oltersdorf suspended Plaintiffs Bankey and Kiessel, he told them that they did not "have the right to make false public accusations of unlawful conduct by the Leelenau County Sheriff." R. 184-3. This statement is sufficient to establish a nexus between the plaintiffs' protected speech and the adverse action.

## C. Clearly Established Right of the Plaintiffs

The second prong of the qualified immunity analysis requires courts to ask whether the plaintiff's constitutional right was clearly established. *Pearson*, 555 U.S. at 243-44. In the Sixth Circuit, a public employee's First Amendment right against retaliation for protected speech has been clearly established for nearly two decades. *See Williams v. Kentucky*, 24 F.3d 1526, 1537 (6th Cir. 1994). The defendants are therefore entitled to qualified immunity only if a reasonable official could have believed the plaintiffs knowingly or recklessly made

false statements in their protected speech. *See Pickering*, 391 U.S. at 574; *Grossman v. Allen*, 950 F.2d 338, 342 (6th Cir. 1991).

The defendants argue that a reasonable official could have believed that the plaintiffs knowingly or recklessly made false statements in their newspaper letter, because the Michigan Attorney General stated that defendants' eavesdropping was permissible. Appellants' Br. at 24-25. A state attorney general's opinion, however, is not sufficient to make a conclusive determination of the legality of a public officer's acts. *See Danse Corp. v. City of Madison Heights*, 466 Mich. 175, 182 n.6 (2002) ("[O]pinions of the Attorney General are not binding on courts as precedent."). Even if it were, this information alone could not have led a reasonable official to conclude the plaintiffs acted with reckless indifference to the truth. The sheriffs knew the plaintiffs had reported the eavesdropping to the FBI as well as to the Michigan State Police, suggesting the plaintiffs believed that the Sheriff's Office broke both federal and state laws. The Attorney General's opinion dealt only with the legality of the eavesdropping under state law, *see* R. 182-5, so a reasonable official could not have relied on the opinion to conclude that the plaintiffs falsely accused the sheriffs of violating federal law. The defendants therefore are not entitled to qualified immunity under the second prong of the qualified immunity analysis.

For the foregoing reasons, we **AFFIRM** the judgment of the district court.