**NOT RECOMMENDED FOR PUBLICATION**
File Name: 14a0788n.06

**No. 13-6394**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| MELVIN KINDLE; BRADLEY SILVERIA; DIEDRA ADKINS, | ) ) ) | **FILED** Oct 16, 2014 DEBORAH S. HUNT, Clerk |
| Plaintiffs-Appellants, | ) ) |  |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT |
| CITY OF JEFFERSONTOWN, KENTUCKY; CLAY FOREMAN, Mayor, individually and in his official capacity, JEFFERSONTOWN CIVIL SERVICE COMMISSION, | ) ) ) ) ) | COURT FOR THE WESTERN DISTRICT OF KENTUCKY |
| Defendants-Appellees. | ) ) ) |  |

BEFORE: ROGERS and GRIFFIN, Circuit Judges; and VAN TATENHOVE, District Judge.[*]

GRIFFIN, Circuit Judge.

Plaintiffs are former public employees who appeal the district court's grant of summary judgment in favor of defendants on their First Amendment retaliatory-discharge claims. The district court ruled that plaintiffs were collaterally estopped from litigating the issue of whether their speech was false or made with reckless disregard for its falsity. We agree and affirm.

---

[*]The Honorable Gregory F. Van Tatenhove, United States District Judge for the Eastern District of Kentucky, sitting by designation.

I.

In plaintiffs' prior appeal, our court summarized the relevant background as follows:

Plaintiffs worked for the Jeffersontown Police Department ("JPD"), Kindle as a police officer and Silveria and Handy[1] as dispatchers. On January 25, 2007, Plaintiffs were fired following a proceeding before the Jeffersontown Civil Service Commission ("JCSC" or "the Commission"). Plaintiffs were brought before the Commission after drafting and circulating a report alleging various incidents of misconduct on the part of Lieutenant Colonel Peggy Emington of the JPD, in her official capacity. Plaintiffs tendered the report to Jeffersontown Mayor Clay S. Foreman, Jeffersontown Chief of Police Colonel Fred Roemele, Emington, and members of the Jeffersontown City Council ("JCC") as an attachment to a letter addressed to the Jeffersontown Ethics Commission ("JEC").

In September 2006, prior to filing the report, Silveria and Handy informed Roemele that Emington had created a hostile work environment that had prompted them to go on medical leave. Roemele responded that he was unable to do anything with regard to Emington because his hands were "politically tied." On October 3, 2006, while both Silveria and Handy were on medical leave, seven JPD sergeants and two JPD corporals reported allegations of misconduct by Emington to Roemele, who told Foreman about the meeting.

On October 10, 2006, Plaintiffs reported to Foreman alleged violations of police department policy by Emington. Plaintiffs indicated that they had consulted an attorney and were considering filing a report pursuant to the Kentucky Whistleblower Act. Foreman told Plaintiffs to delay taking any action until after election day, which was four weeks away, because the election was consuming much of his time. Foreman asked Roemele to monitor the situation closely.

On October 27, 2006, Plaintiffs tendered the report pursuant to § 61.102 of the Kentucky Whistleblower Act alleging: "facts and information relative to actual and/or suspected violations of laws, ordinances, policies and procedures of the City of Jeffersontown and other authorities and jurisdictions . . . [and] actual incidents and ongoing practices of mismanagement, waste, and abuse of authority occurring within the Jeffersontown Police Department and perpetrated by Lt. Col. Peggy Emington." Specifically, Plaintiffs' report alleged that Emington: (1) violated federal and state wage and hour laws by requiring dispatchers to report for duty fifteen minutes early and not paying them overtime; (2) generated unnecessary overtime by forcing some dispatchers to work overtime so that others could attend social events with Emington; (3) violated staffing policy by leaving only one dispatcher on duty so that others could accompany Emington on Secretary's Day; (4) failed to contribute to the retirement account of a part-time

---

[1] When plaintiffs filed this action, Diedra Handy's name was Diedra Adkins.

employee and then reduced that employee's work schedule when she complained to the administration; (5) improperly used an online database to check on employees' controlled substance prescriptions; (6) failed to qualify with her firearm; and (7) committed miscellaneous acts of mismanagement and/or abuse of authority.

On October 31, 2006, Roemele notified Foreman that pursuant to JPD Standard Operating Procedures ("SOPs") he felt obligated to have the JPD investigate the allegations and file a written report. On November 1, 2006, Foreman responded to Roemele that the matter had been referred to the JEC and that the JPD should not conduct an investigation.

On November 20, 2006, Plaintiffs withdrew their complaint, citing retaliatory action that Jeffersontown had taken against them. Plaintiffs did not appear at the JEC hearing on November 21, 2006, which was scheduled as a result of their report. Nonetheless, the JEC reviewed and dismissed Plaintiffs' complaint with prejudice, citing a lack of evidence establishing jurisdiction.

On November 28, 2006, Emington filed a formal complaint against Plaintiffs with Foreman, which Foreman forwarded to the JCSC. Emington's complaint requested that Jeffersontown bring a formal personnel investigation and civil service charges against Plaintiffs and alleged that Plaintiffs violated several state laws and JPD SOPs by the manner in which they disclosed false information. On December 5, 2006, the JCSC issued a notice of hearing to Plaintiffs, advising them of their procedural due process rights under the civil service ordinance and scheduling a hearing for December 13, 2006. The hearing was continued at Plaintiffs' request to January 25, 2007.

After the Jefferson Circuit Court denied Plaintiffs' motion to prohibit the JCSC from conducting the hearing, the Commission convened as scheduled. Plaintiffs appeared by counsel and informed the Commission that they had elected to pursue their claims in circuit court and would be presenting no evidence, calling no witnesses, and making no arguments. At that point, Silveria and Handy exited the hearing room; Kindle stayed in the room for the duration of the proceedings, but did not participate. After Emington completed her case and the Commission deliberated, the Commission found that Plaintiffs had violated three JPD rules and terminated Plaintiffs' employment with the JPD.

*Kindle v. City of Jeffersontown, Ky.*, 374 F. App'x 562, 563–64 (6th Cir. 2010) (internal record citations and footnotes omitted).

On February 5, 2007, the Commission issued written findings of fact under Kentucky law. The findings stated in pertinent part:

The Commission unanimously finds from the evidence that the statements made by [Kindle, Silveria, and Handy] directly, or in the case of the statements made by Respondent Kindle before the City Council on November 15, 2006, and ratified by [Silveria and Handy] by their presence there and then, to have been either false or made intentionally with reckless disregard for their truth or falsity. The Commission further finds that the respondents had every opportunity to learn of their falsity and in many cases direct access to documents which would have indicated falsity. The Commission further finds from the evidence that the statements made November 15, 2006 that the Department, its command, and by implication, the Mayor, the Council, and the City Attorney, was engaged in "injustice", "corruption", and "unethical behavior" not only to have been false and reckless, but to have seriously damaged the internal morale of the Department, as well as the confidence of the citizens of Jeffersontown in the integrity of the Department.

The Commission also finds from substantial evidence presented that the charges and allegations against LtCol [sic] Emington, and other Department personnel, contained in the "Report Pursuant to KRS 61.102" filed October 27, 2007 with the Jeffersontown Ethics Commission, were each and every one without basis in law or fact. Further, the Commission finds that a strong inference against the Respondents, unrebutted anywhere in the record, can be drawn from their failure to appear at the hearing scheduled by the Ethics Commission, which resulted in dismissal of their complaint, that they did so because they themselves knew that the complaint had no validity.

Dist. Ct. R. 101, ID 1491–92.

Shortly thereafter, plaintiffs filed suit in federal district court, claiming that defendants violated the Kentucky Whistleblower Act, Ky. Rev. Stat. §§ 61.101 *et seq.*, and the First Amendment under 42 U.S.C. § 1983.

On January 9, 2009, the district court granted defendants' motion for summary judgment, holding that: (1) the Kentucky Whistleblower Act claims failed because the City was not an "employer" under the Act; (2) the First Amendment claims failed because plaintiffs' speech was not on a matter of public concern; (3) the First Amendment claims against Foreman in his individual capacity failed because Foreman was entitled to qualified immunity; and (4) the First

Amendment claims against Foreman in his official capacity and the Commission failed because they were duplicative of the claims against the City. Plaintiffs timely appealed.

In deciding plaintiffs' initial appeal, this court reversed the district court and held that (1) the City was an "employer" under the Kentucky Whistleblower Act; (2) plaintiffs' speech addressed a matter of public concern; (3) the finding that plaintiffs' speech was on a matter of public concern required remand on the qualified immunity question; and (4) the Commission was a necessary party and should not have been dismissed as an entity that could not be sued. *Kindle*, 374 F. App'x at 565–71. Also, we remanded the case to the district court for further proceedings consistent with our opinion. *Id.* at 571.

While the case was pending in the district court on remand, the Kentucky Supreme Court held in *Wilson v. City of Central City*, 372 S.W.3d 863 (Ky. 2012), that the Kentucky Whistleblower Act does not apply to cities such as Jeffersontown. As a consequence of *Wilson*, plaintiffs have now abandoned this claim.

As for the remaining First Amendment claims, on remand defendants again moved for summary judgment. This time, defendants raised an issue-preclusion affirmative defense that was pled in their answer but not asserted in their first motion for summary judgment. Defendants argued that although plaintiffs' speech touched a matter of public concern, the constitutional claims failed because the First Amendment does not protect knowingly false speech. For the first time in a motion for summary judgment, defendants asserted that plaintiffs are collaterally estopped from relitigating the veracity of their speech because they refused to participate in the hearing before the Commission, which determined that the speech was false or made with reckless disregard for the truth. In response, plaintiffs argued that this court's prior opinion included a determination that their speech was true and that that finding was the "law of

the case." In addition, plaintiffs argued defendants forfeited their preclusion defense by not raising it in their first motion for summary judgment.

On September 26, 2013, the district court granted defendants' motion for summary judgment, holding that (1) this court's prior opinion did not expressly decide whether plaintiffs' speech was true; (2) defendants did not forfeit any argument that plaintiffs' speech was false or made with reckless disregard for the truth; (3) plaintiffs were collaterally estopped from challenging whether their speech was false or made with reckless disregard for the truth because they failed to participate in the Commission hearing; and (4) plaintiffs' First Amendment claims failed as a matter of law because their speech—although on a matter of public concern—was false or made with reckless disregard for the truth. Plaintiff timely appealed.

## II.

We review a district court's grant of summary judgment de novo. *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009). Summary judgment is proper when, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Burley v. Gagacki*, 729 F.3d 610, 618 (6th Cir. 2013).

## III.

"The Supreme Court has held that 'statements by public officials on matters of public concern must be accorded First Amendment protection despite the fact that the statements are directed at their nominal superiors.'" *Kindle*, 374 F. App'x at 567 (quoting *Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205*, 391 U.S. 563, 574 (1968)). However, a public employee's speech is not entitled to First Amendment protection when the employer shows that the speech was knowingly false or made with reckless disregard for the truth. *See, e.g.*, *Swetlik v.*

*Crawford*, 738 F.3d 818, 827–28 (7th Cir. 2013); *Westmoreland v. Sutherland*, 662 F.3d 714, 721–23 (6th Cir. 2011); *Reuland v. Hynes*, 460 F.3d 409, 413–15 (2d Cir. 2006).

On appeal, plaintiffs advance three arguments in opposition to summary judgment. First, they argue that our prior opinion held that plaintiffs' speech was true, and thus its holding is the "law of the case." Second, plaintiffs assert that defendants have waived or forfeited the argument that plaintiffs' speech was false or made with reckless disregard for the truth by failing to raise it in their first summary judgment motion. Third, even if we disagree on the first and second points, they argue that we should not give preclusive effect to the Commission's factual finding that plaintiffs' speech was false or made with reckless disregard for the truth because the finding was arbitrary. We address each argument in turn.

A.

Plaintiffs first argue that because our prior opinion held that their speech was true, that holding is the "law of the case" and defendants may no longer challenge it. "The law-of-the-case doctrine 'posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *Scott v. Churchill*, 377 F.3d 565, 569–70 (6th Cir. 2004) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)). The related "mandate rule"—a "'specific application of the law-of-the-case doctrine'"—holds that "'a district court is bound to the scope of the remand issued by the court of appeals.'" *Id.* at 570 (quoting *United States v. Campbell*, 168 F.3d 263, 265 (6th Cir. 1999)). Accordingly, when we remand a case for further proceedings, "the trial court must proceed in accordance with the mandate and the law of the case as established on appeal." *Mason v. Mitchell*, 729 F.3d 545, 550 (6th Cir. 2013) (internal quotation marks omitted).

Application of these doctrines is "limited to those questions necessarily decided in the earlier appeal." *Hanover Ins. Co. v. Am. Eng'g Co.*, 105 F.3d 306, 312 (6th Cir. 1997). "[T]he phrase 'necessarily decided' . . . describes all issues that were 'fully briefed and squarely decided' in an earlier appeal." *Perkins v. Am. Elec. Power Fuel Supply, Inc.*, 91 F. App'x 370, 374 (6th Cir. 2004) (quoting 1B James Wm. Moore, Moore's Federal Practice ¶ 0.404[1], at II–5 (2d ed. 1996)). On remand, "the trial court is free to consider any issues not decided 'expressly or impliedly by the appellate court.'" *Kavorkian v. CSX Transp., Inc.*, 117 F.3d 953, 958–59 (6th Cir. 1997) (quoting *Jones v. Lewis*, 957 F.2d 260, 262 (6th Cir. 1992)).

We review the district court's interpretation of our previous mandate de novo. *United States v. Parks*, 700 F.3d 775, 777 (6th Cir. 2012). The mandate "must be read with the analysis offered in the opinion . . . [and] context matters." *United States v. O'Dell*, 320 F.3d 674, 681 (6th Cir. 2003) (internal quotation marks omitted). In other words, "'[t]he trial court must implement both the letter and the spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces.'" *Mason*, 729 F.3d at 550 (quoting *Nemir v. Mitsubishi Motors Corp.*, 381 F.3d 540, 549 (6th Cir. 2004)); *see also United States v. Mendez*, 498 F.3d 423, 426 (6th Cir. 2007) (When interpreting a mandate, "an appellate court's disposition of an appeal must be read against the backdrop of prior proceedings in the case." (internal brackets and quotation marks omitted)).

Here, our prior opinion did not expressly or impliedly decide whether plaintiffs' speech was true. The issue was simply not raised by the parties in the motions before the district court, or on appeal. Considering the totality of the circumstances surrounding "the letter and the spirit" of the appeal, there is no indication that our court gave any consideration to the issue of whether plaintiffs' speech was false or made with reckless disregard for the truth. *See Mason*, 729 F.3d at

550. At most, we simply assumed, without deciding, that plaintiffs' speech was true, and went on to address whether the speech was a matter of public concern. Mere recital of factual matters assumed for purposes of decision are not part of the mandate, nor do they form the "law of the case." *See Jones*, 957 F.2d at 262–63 (Although the opinion on the prior appeal recited, in repeating facts gleaned from the record below, that police officers had entered the house where the defendant was arrested without consent, the appellate court did not actually make a disposition of the issue that was binding on remand as part of the opinion and mandate. The district court properly submitted the consent issue to the jury.).

Moreover, plaintiffs' continued reliance on *Westmoreland*, 662 F.3d 714, is misplaced. In the present case, the district court on remand considered—and rejected—plaintiffs' *Westmoreland* argument as follows:

> Plaintiffs suggest that the Sixth Circuit's finding that Plaintiffs' speech touched a matter of public concern necessarily encompassed a finding that Plaintiffs' speech was not recklessly or knowingly false. In support, they cite the following statement from *Westmoreland v. Sutherland*, 662 F.3d 714, 721 (6th Cir. 2011) concerning the application of [*Pickering*] when there is an allegation that a public employee's speech was knowingly or recklessly false: "*Pickering* balancing is not required if it is determined that the employee made statements with knowledge of, or reckless indifference to, their falsity." Thus, Plaintiffs contend that the question of whether employee speech was made with knowledge of, or reckless indifference to, its falsity is a part of the first prong of the *Pickering* test—whether the statement was about a matter of public concern.
>
> However, Plaintiffs ignore that in *Westmoreland*, the Sixth Circuit first determined that, in that case, "the substance of plaintiff's expression undoubtedly involved matters of public concern," 662 F.3d at 720, before continuing on to address whether the plaintiff's speech was intentionally or recklessly false, *id.* at 720–722. In other words, *Westmoreland* supports the notion that the question of whether a statement addressed a matter of public concern is separate and distinct from the question of whether a statement was made with knowledge of and reckless indifference to its falsity. Thus, a decision as to the former question does not necessarily encompass a finding as to the latter question.

> To be sure, one statement in the Sixth Circuit's opinion in this case might suggest that this court should not consider Defendants' argument that Plaintiffs' speech was recklessly or knowingly false. Namely, the Sixth Circuit, after concluding that Plaintiffs' speech addressed a matter of public concern, stated that it was "remand[ing] to the district court to conduct the second and third prongs of the *Pickering* test in a manner consistent with this opinion." *Kindle*, 374 F. App'x at 569. But that statement was made under the belief that, having concluded that Plaintiffs' speech was [ ] a matter of public concern, the only issues left on the constitutional question concerned the application of the second and third prongs of *Pickering*. As the parties had only briefed the "public concern" issue before the Sixth Circuit, it was not aware that Defendants may have had an alternative basis for summary judgment that would render the need to reach the second (or potentially the third) prong of the *Pickering* test unnecessary. When read in context, the Sixth Circuit was simply telling this court to accept that the speech was a matter of public concern, contrary to this court's earlier conclusion, and to continue with the analysis using the standards it set forth in its opinion. The court does not read the statement concerning the need for this court "to conduct the second and third prongs of the *Pickering* test in a manner consistent with this opinion" to foreclose this court from deciding another issue, not previously considered by the Sixth Circuit, that would render unnecessary the remainder of the *Pickering* analysis.

Dist. Ct. R.109, ID 1607–09.

The district court's analysis is well-taken and remains unchallenged. In their appellate briefs, plaintiffs repeat the same *Westmoreland* argument that the district court rejected. In doing so, plaintiffs do not rebut the district court's rationale. Specifically, plaintiffs fail to address the district court's conclusion that the issue of whether speech addressed a matter of public concern is analytically distinct from the issue of whether speech is false, even assuming that the content of the speech touched a matter of public concern. As a result, plaintiffs have failed to put the district court's ruling into legitimate dispute. *See United States v. Hall*, 549 F.3d 1033, 1042 (6th Cir. 2008) (an undeveloped argument, adverted to only in a perfunctory manner, and unaccompanied by developed argumentation, is properly deemed forfeited). Because our previous opinion did not explicitly or implicitly address the veracity of plaintiffs' speech, neither

the law-of-the-case doctrine nor the mandate rule precludes defendants from challenging the truthfulness of plaintiffs' speech on remand.

B.

Next, plaintiffs argue that defendants forfeited their opportunity to challenge the veracity of plaintiffs' speech by not raising the issue in their first summary judgment motion. The law-of-the-case doctrine contains a forfeiture rule that plaintiffs urge us to enforce against defendants. That is, "[t]he law-of-the-case doctrine bars challenges to a decision made at a previous stage of the litigation which could have been challenged in a prior appeal, but were not." *United States v. Adesida*, 129 F.3d 846, 850 (6th Cir. 1997). "A party who could have sought review of an issue or a ruling during a prior appeal is deemed to have waived the right to challenge that decision thereafter," because "[i]t would be absurd that a party who has chosen not to argue a point on a first appeal should stand better as regards the law of the case than one who had argued and lost." *Id.* (internal quotation marks omitted); *see also United States v. McKinley*, 227 F.3d 716, 718 (6th Cir. 2000) ("[T]he general rule [is] that when a party fails to seek review of a district court's final order, it is barred from reasserting that issue in any subsequent appeals occurring in that case.").

This forfeiture rule, however, has no application in this case. First, defendants do not challenge any portion of the January 9, 2009, summary judgment ruling in the instant appeal. They accept—as they must—that plaintiffs' speech addressed a matter of public concern but attack the truthfulness of that speech. Therefore, the court cannot fault defendants for raising challenges to the first summary judgment ruling in this appeal that should have been raised in the prior appeal.

Second, because plaintiffs appealed the first summary judgment ruling that their speech was not on a matter of public concern, defendants, as the prevailing party, were not required to appeal.

Third, we have never required a defendant who has properly pled an affirmative defense in his answer—as is the case here—to also file a motion for summary judgment in order to preserve the affirmative defense. This is not surprising because Federal Rule of Civil Procedure 8(c) requires only that an affirmative defense be included in a responsive pleading, not that it be the subject of a pretrial motion, and plaintiffs have identified no authority suggesting otherwise.

Fourth, the waiver or forfeiture cases relied upon by plaintiffs are procedurally distinguishable: none holds that a defendant must bring any and all affirmative defenses in its first motion for summary judgment or suffer waiver. This is not surprising given the havoc that such a "raise-or-waive" rule would inflict upon our dockets, i.e., overstuffed summary judgment motions. Further, plaintiffs wrongly presume that all affirmative defenses must be brought through Rule 56. A defendant can rationally decide to include one or more of its affirmative defenses in a summary judgment motion but not all of its affirmative defenses. We know of no court that has held that a defendant is barred from asserting its legal defenses if not brought in its initial Rule 56 motion.

Lastly, in the present case, plaintiffs suffer no prejudice in litigating the collateral estoppel issue. Defendants promptly raised the defense in their answer, and the parties fully briefed the issue before the district court.

For these reasons, defendants have not waived or forfeited the argument that plaintiffs are collaterally estopped from litigating whether their speech was false or made with a reckless disregard for the truth.

C.

The final issue in the present appeal is the preclusive effect, if any, of the Commission's factual finding that plaintiffs' speech was "either false or made intentionally with reckless disregard for [its] truth or falsity." Dist. Ct. R.101-12, ID 1491. "[T]he availability of collateral estoppel is a mixed question of law and fact which this court reviews de novo." *Wolfe v. Perry*, 412 F.3d 707, 716 (6th Cir. 2005) (internal quotation marks omitted).

"The federal test for state administrative issue preclusion [] has three basic elements: First, was the agency acting in a judicial capacity? Second, would the decision have preclusive effect under state law? And last, does the federal action seek to litigate issues already determined by the state agency?" *Columbia Gas Transmission, LLC v. The Raven Co., Inc.*, Civil No. 12-72-ART, 2014 WL 2711943, at *2 (E.D. Ky. June 13, 2014) (citing *Nelson v. Jefferson Cnty.*, 863 F.2d 18, 19 (6th Cir. 1988)). Plaintiffs dispute the second element—whether the decision would have preclusive effect under state law.

Plaintiffs argue that the Commission's finding would not have preclusive effect under Kentucky law because the Commission exceeded its powers by adjudicating plaintiffs' First Amendment claims. We disagree and conclude that the Commission did not adjudicate plaintiffs' First Amendment claims.

The Commission was tasked with resolving Emington's complaint "for and on behalf of the Jeffersontown Police Department [] and The City of Jeffersontown [] against Officer Melvin Kindle, and Dispatchers Brad Silvera and Dee Adkins, all employees of the Department." Dist. Ct. R.101-12, ID 1490. It was not asked to resolve plaintiffs' First Amendment claims. The district court correctly identified the fatal flaw in plaintiffs' position as follows:

> Plaintiffs' argument confuses the difference between claims and issues. The JCSC determined a factual issue—whether Plaintiffs' speech was knowingly or recklessly false. While such a factual issue is also relevant to (indeed, potentially dispositive of) a First Amendment claim, it does not mean that the JCSC adjudicated a *claim* it had no power to reach. It simply adjudicated a necessary factual issue concerning Emington's complaint, and there is no dispute that the JCSC had authority over that complaint.

Dist. Ct. R.109, ID 1612 (emphasis in original). Plaintiffs offer nothing to rebut this analysis and continue to insist that "the JCSC roamed far afield from its charge [of resolving Emington's complaint], asserting that it should adjudicate whether Plaintiffs were suffering any retaliation for exercise of their First Amendment rights." Plaintiffs ignore the dispositive distinctions between claim and issue preclusion at their own peril.

On this record, it is clear that the Commission had the authority to issue a factual finding on the veracity of plaintiffs' speech as it related to Emington's complaint. It is also undisputed that plaintiffs elected not to participate in the Commission's hearing upon advice of counsel, and that the Commission made the explicit factual finding that plaintiffs' speech was false or made with reckless disregard for the truth. Finding the elements of state administrative issue preclusion satisfied, plaintiffs are collaterally estopped from arguing that their speech was not false or made with reckless disregard for the truth. *See Nelson*, 863 F.2d at 19.

Accordingly, because plaintiffs are collaterally estopped from relitigating the factual issue of whether their speech was false or made intentionally with reckless disregard for their falsity, their First Amendment claims fail as a matter of law.

IV.

For these reasons, we affirm the judgment of the district court.