NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a1210n.06

No. 11-5832

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Nov 21, 2012*

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| SUSAN SPENCER, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| CITY OF CATLETTSBURG, et al., | ) | THE EASTERN DISTRICT OF |
| | ) | KENTUCKY |
| Defendants-Appellees. | ) | |
| | ) | OPINION |

Before: BOGGS, GILMAN, and DONALD, Circuit Judges.

**Bernice B. Donald**, Circuit Judge. Plaintiff-Appellant Susan Spencer filed a 42 U.S.C. § 1983 action against Defendants-Appellees City of Catlettsburg, Kentucky ("the City") and Pauline Hunt in her individual and official capacity as Mayor of the City. Spencer alleged wrongful termination of her employment in violation of her First and Fourteenth Amendment rights. The district court granted Appellees' motion for summary judgment. Appellant now appeals the district court's grant of summary judgment on her First Amendment retaliation claim. For the reasons set forth below, we **AFFIRM.**

I.

In the spring of 2008, the City decided to create the position of Assistant City Clerk, due in large part to the fact that the current City Clerk, Pauline Hunt, was in her eighties, had health problems, and was contemplating retirement. The City wanted a succession plan in the event that Hunt left her position. The City operates under a mayor-council plan of government, and the authority to hire and fire employees rests solely with the mayor. In May 2008, Spencer interviewed for the position of Assistant City Clerk and was hired by then-Mayor James Allen Lambert.

Prior to her employment with the City, Spencer did not have experience working for a government agency and did not have a specific understanding of the duties of a city clerk. In July 2008, the City sent Spencer to the Kentucky Municipal Clerk's Institute in Frankfort, Kentucky to receive city-clerk training. Upon Spencer's return from training, she and Hunt often disagreed about her job duties, and friction soon developed between the two women.

On July 4, 2008, Hunt announced that she would retire ,effective August 1, 2008, and run against Mayor Lambert in the November 2008 election. After Hunt's retirement, Spencer was promoted to the position of City Clerk. During the ensuing mayoral campaign, Spencer supported Lambert. Spencer testified that she feared losing her job if Hunt was elected.

Upon assuming the position of City Clerk, Spencer came to believe that certain City files were missing. Spencer contacted the Kentucky Department of Libraries and Archives ("KDLA")

for help with the missing records. The KDLA customarily assists municipalities regarding compliance with legal requirements for maintaining city records. On August 7, 2008, KDLA representative Tim McIntosh came to Catlettsburg to meet with Spencer. McIntosh confirmed that there appeared to be missing records and that an investigation into the matter was appropriate.

On September 16, 2008, during a routine phone call regarding the City Council's meeting agenda, Spencer mentioned the missing records matter to a reporter for the Ashland *Daily Independent*, a local newspaper. Citing Spencer as a source, the *Daily Independent* published a series of articles regarding the missing records. Although Spencer never stated that Hunt was responsible for the alleged missing records, the articles strongly implied that Hunt was to blame.

On November 3, 2008, Hunt defeated incumbent Mayor Lambert and assumed the position of Mayor of Catlettsburg. Because the missing records were still an issue, the City launched an official investigation. City officials ultimately concluded that "everything was fine," and that an audit was unnecessary because all of the City's records, with the exception of certain bank statements for 2006, were found. The KDLA considered the matter closed. Afterwards, Hunt told Spencer, "I know everything. . . . I sit in here now and you sit in there and you can't run and call James Allen and tell on me anymore."

On December 3, 2008, Hunt called a City Council executive session to discuss terminating Spencer. In a memorandum, Hunt cited several reasons for terminating Spencer, noting alleged transactional mistakes and Spencer's inability to perform certain duties. The day after Hunt's meeting with the council (and one month after Hunt took office), Hunt terminated Spencer. Neither the memorandum nor Spencer's Notice of Termination mentioned Spencer's comments to the *Daily Independent*.

On February 6, 2009, Spencer filed suit against Mayor Hunt and the City under 42 U.S.C. §§ 1983 and 1988, as well as Kentucky's Whistleblower Act, K.R.S.§ 61.102, alleging that her termination violated her First Amendment rights. On April 14, 2011, the district court granted summary judgment in favor of Hunt and the City. Spencer now appeals the district court's grant of summary judgment on her First Amendment claim.

II.

We review a district court's grant of summary judgment *de novo*. *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004). Summary judgment is proper where "the pleadings, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Nat'l Enters., Inc. v. Smith*, 114 F.3d 561, 563 (6th Cir. 1997); *see also* Fed. R. Civ. P. 56(a), (c). The court views the record in the light most favorable to the nonmoving party and draws all reasonable inferences in favor of that party. *Blackmore*, 309 F.3d at 895.

A public employee does not give up her right to free speech on matters of public concern by virtue of her public employment. *Connick v. Myers*, 461 U.S. 138, 140 (1983); *Brandenburg v. Hous. Auth. of Irvine*, 253 F.3d 891, 897 (6th Cir. 2001). To sustain a First Amendment claim brought under § 1983, the plaintiff must demonstrate a deprivation of his or her constitutionally protected expressive rights caused by a person acting under color of law. *Westmoreland v. Sutherland*, 662 F.3d 714, 718 (6th Cir. 2011). To establish a claim for First Amendment retaliation, a plaintiff must prove: (1) that she was engaged in constitutionally protected conduct; (2) that the employer's adverse action would chill a person of ordinary firmness from engaging in that conduct; and (3) that the protected conduct was at least a motivating factor in the employer's desire to discipline or dismiss the plaintiff. *Gaspers v. Ohio Dep't of Youth Servs.*, 648 F.3d 400, 412 (6th Cir. 2011). "An employee must establish a link between 'the speech in question [and] the defendant's decision to dismiss.'" *Burgess v. Paducah Area Transit Auth.*, 387 F. App'x 538, 545 (6th Cir. 2010) (alteration in original) (quoting *Bailey v. Floyd Cnty. Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997)).

If the plaintiff can establish a prima facie case, "the burden of persuasion shifts to the defendant who must show by a preponderance of the evidence that there were other reasons for the adverse action and that the same adverse action would have resulted even if the plaintiff had not engaged in the protected activity at issue." *Leary v. Daeschner*, 349 F.3d 888, 898 (6th Cir. 2003).

A. Protected Statements

Spencer argues that her statements to the KDLA and to the reporter from the Ashland *Daily Independent* were constitutionally protected and that Hunt terminated her in retaliation for making those statements. In response, the City and Hunt contend that the statements were not protected speech because they were blatantly false and made with reckless disregard for the truth. Because there is no factual dispute as to the content of Spencer's statements, the district court determined as a matter of law that Spencer's statements were protected speech. *Westmoreland*, 662 F.3d at 718. Specifically, the district court found that Spencer's statements addressed a matter of public concern because her speech was in reference to allegedly missing records that the City was required by law to keep and that the purpose of Spencer's speech was to shed light on potential misconduct. *Spencer v. City of Catlettsburg, Ky.*, 2011 WL 1430237, at *9 (E.D. Ky. Apr. 14, 2011). The district court also found that because the statements were in reference to legitimate community concerns and the Defendants failed to show that the statements interfered with Spencer's ability to perform her job, Spencer met her required burden of production. *Id*. at *10 (citing *Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205*, 391 U.S. 563, 568 (1968)).

In order to classify speech as protected in this context, the speech must be on a matter of public concern; if it is, the citizen's interest in making the statement must outweigh the State's interest, as an employer, "in promoting the efficiency of the public services it performs through its employees." *Pickering*, 391 U.S. at 568. The speaker must be speaking as a citizen and not pursuant to her official duties. *Westmoreland*, 662 F.3d at 718-19.

In determining whether a plaintiff's First Amendment interests outweigh the defendant's interests in efficiency in the workplace, this court has found the following factors relevant:

> [Whether the speech was] related to an issue of public interest and concern; was likely to foment controversy and disruption; impeded the department's general performance and operation; affected loyalty and confidence necessary to the department's proper functioning; subverted department discipline; was false and the employer could not have easily rebutted or corrected the errors; and was directed toward a person whom the speaker normally contacted within the course of daily work.

*See v. City of Elyria*, 502 F.3d 484, 493 (6th Cir. 2007) (quoting *Solomon v. Royal Oak Twp.*, 842 F.2d 862, 865 (6th Cir. 1988)).

Spencer's statements were on a matter of public concern and, given her recent promotion to City Clerk, her investigation into the missing records was certainly necessary to the department's proper function. Moreover, the statements were not false; the bank statements from 2006, although easily replaceable, were in fact missing. Although the statements created controversy, the Defendants did not show that the statements or the resulting controversy interfered with Spencer's ability to perform her job as Clerk.

As to whether Spencer's statements were made as a citizen, nothing in the record suggests that Spencer was required to tell the KDLA or the *Daily Independent* that she suspected the City might be missing some records. In fact, as the district court pointed out, Hunt insisted that Spencer's duties with regard to providing the newspaper information were confined solely to relaying the

Council's agenda. This suggests that even Defendants do not believe Spencer's statements were part of her official job responsibilities, despite their argument to the contrary.

Accordingly, the district court properly concluded that Spencer's statements were constitutionally protected.

B. Adverse Action

The parties do not dispute that Spencer's termination constitutes an adverse action. Spencer met her burden to prove that she suffered from an action that would likely chill a person of ordinary firmness from continuing to engage in the constitutionally protected conduct. *See Leary*, 349 F.3d at 901.

C. Motivating Factor

The motivating factor prong of a First Amendment retaliation case can be supported by circumstantial evidence, with temporal proximity aiding in the analysis. *Gaspers*, 648 F.3d at 412 n.15. Such circumstantial evidence must consist of specific, nonconclusory allegations reasonably linking Spencer's speech to Spencer's termination. *See Rodgers v. Banks*, 344 F.3d 587, 602 (6th Cir. 2003). "Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection. . . ." *Gaspers*, 648 F.3d at 412 n.15.

Defendants argue, and the district court held, that the causation element is lacking, and thus Spencer did not establish the motivating factor prong of a First Amendment retaliation claim.

Spencer contends, however, that there are several pieces of evidence in the record establishing that her termination was motivated at least in part by her protected statements.

Spencer first argues that Hunt's deposition testimony indicates Hunt's displeasure with Spencer's statements regarding the missing records. When Hunt was asked if she was "happy" about the newspaper articles that she attributed to Spencer, Hunt replied, "Well, no, I was not happy." Hunt's testimony alone may provide enough proof for a jury to find that Hunt terminated Spencer in retaliation for the statements.

Second, the campaign letter Hunt circulated during the mayoral election also supports an inference that Spencer's statements were a motivating factor in her termination. Hunt's letter specifically addressed the missing records controversy and refuted any implication that she was responsible for the alleged missing records. The letter also stated:

> If elected as your mayor, I will be a full time mayor and will make sure all employees answering to me are supervised and trained to handle their jobs and protect the tax payers money. What the city currently has is a city clerk taking responsibility of running the City of Catlettsburg. . . . What you have is an inexperienced and unsupervised employee running our city.

This statement clearly refers to Spencer, who was, at that time, the City Clerk for Catlettsburg. The letter's criticism of Spencer, coupled with Hunt's denials regarding the "missing records," may suggest that any plan to terminate Spencer was, at least in part, due to Spencer's comments to the *Daily Independent* and the KDLA.

Third, Spencer avers that when Hunt first took office as mayor, Hunt confronted Spencer about the scandal and said, "I know everything. . . . I sit in here now and you sit in there and you

can't run and call James Allen [Lambert] and tell on me anymore." Because Hunt was alleged to have been responsible for the missing records, a jury could infer that the phrase, "tell on me anymore" indicated that Hunt was going to ensure that Spencer did not have another opportunity to accuse her of wrongdoing. Hunt's comment specifically suggests that she wished to stop Spencer from engaging in similar protected conduct in the future.

### i. Temporal Proximity

When an adverse employment action occurs soon after an employer learns of the protected activity, this court looks at the length of time between the protected speech and the adverse action to determine whether the temporal proximity between the events is significant enough to constitute evidence of a causal connection in establishing a case of First Amendment retaliation. *Gaspers*, 648 F.3d at 412. Generally, when an employer takes an adverse action immediately after learning of an employee's protected activity, the temporal proximity alone is sufficient to establish the causation element of a First Amendment retaliation claim. *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008). But the more time passes between the protected activity and the adverse action, "the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality." *Id*. Here, roughly five months passed between Spencer's statements to the KDLA and her termination from the City, and about two and one-half months passed between her statements to the *Daily Independent* and termination. Further, Hunt was unable to fire Spencer until she became mayor, and thus Hunt was required to wait until after the election to terminate Spencer.

Coupled with temporal proximity, Spencer thus produced sufficient circumstantial evidence showing that her statements were a motivating factor in her termination. The burden now shifts to the City and to Hunt to show that Spencer would have been terminated regardless of her statements.

D. Burden-Shifting Analysis

To prevail on a motion for summary judgment for a First Amendment retaliation claim, defendants must show by a preponderance of the evidence that they would have taken the same adverse action in the absence of the protected activity. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). Hunt and the City argue that they would have terminated Spencer despite her protected comments due to poor job performance.

The memo that Hunt presented to the Council members did not mention the "missing records" controversy or Spencer's statements to the newspaper. It instead cited several job-related reasons and justifications for terminating Spencer. The memo referenced significant financial transactional mistakes Spencer allegedly made while working as the City Clerk. Hunt indicated that Spencer had failed at performing basic duties, such as properly debiting and crediting accounts, despite having received proper training. Such mistakes were so significant in scope that they yielded losses of thousands of dollars for the City. Given that these mistakes centered on Spencer's primary duties, it is more than reasonable to conclude that these mistakes would alone serve as just cause for termination.

Additionally, Spencer's own deposition testimony reveals that Hunt planned to run for mayor just so that she could fire Spencer. Spencer testified that Hunt made this declaration while Hunt was

still City Clerk and, therefore, before her own statements to the KDLA and the newspaper. Spencer has not presented evidence to rebut this point. Her argument that she was fired for her protected speech is unavailing.

Therefore, even though Spencer was terminated after she made the protected statements, Hunt's memo to the City detailing Spencer's poor job performance and Spencer's admission that Hunt planned to fire her before the protected statements were made together serve as sufficient evidence to indicate that Hunt and the City would have taken the same adverse action despite the protected speech. Accordingly, the district court properly granted summary judgment in favor of the Appellees.

E. Political Association

Spencer also raises the argument that she was fired for her political association with the former mayor, James Allen Lambert. We do not address this issue because it was not raised below. *Barner v. Pilkington N. Am., Inc.*, 399 F.3d 745, 749 (6th Cir. 2005). The issue is therefore waived.

III.

Given the foregoing, we affirm the judgment of the district court.